93 F.3d 1572
 40 U.S.P.Q.2d 1019
 ETHICON ENDO-SURGERY, INC., Plaintiff/Counterclaim Defendant-Appellant,
and
Ethicon, Inc., Counterclaim Defendant-Appellant,
v.
UNITED STATES SURGICAL CORPORATION,
Defendant/Counterclaimant-Appellee.
 No. 96-1008.
 United States Court of Appeals,
Federal Circuit.
 Aug. 29, 1996.
Rehearing Denied Oct. 17, 1996.
 
 Gerald Sobel, Kaye, Scholer, Fierman, Hays, and Handler, LLP, New York City, argued, for plaintiff/counterclaim defendant-appellant Ethicon Endo-Surgery, Inc. and counterclaim defendant-appellant Ethicon, Inc. With him on the briefs were Aaron Stiefel, Daniel P. DiNapoli, New York City, Robert A. Pitcairn, Jr., Cincinnati, OH, and Eric I. Harris, New Brunswick, NJ.
 Eric J. Lobenfeld, Chadbourne & Parke LLP, New York City, argued, for defendant/counterclaimant-appellee. With him on the brief was Drew M. Wintringham. Of counsel were Thomas R. Bremer and John C. Andres, United States Surgical Corporation, Norwalk, Connecticut.
 Before CLEVENGER, Circuit Judge, COWEN, Senior Circuit Judge, and SCHALL, Circuit Judge.
 CLEVENGER, Circuit Judge.
 
 
 1
 Ethicon Endo-Surgery, Inc. (Ethicon) appeals a decision of the District Court for the Southern District of Ohio granting summary judgment of noninfringement to United States Surgical Corp. (U.S. Surgical) with respect to claims 6 and 24 of U.S. Reissue Patent No. 34,519 ('519). Ethicon Endo-Surgery v. United States Surgical Corp., 900 F.Supp. 172, 38 USPQ2d 1385 (S.D.Ohio 1995). We affirm-in-part, vacate-in-part, and remand.I
 
 
 2
 Linear cutter staplers (staplers) are surgical instruments used to cut internal body tissue while simultaneously placing rows of staples along both sides of the incision in order to prevent excessive bleeding. It is important, therefore, that the stapler not be used when its staple cartridge is empty. The '519 patent discloses a "lockout mechanism" for ensuring that once the staple cartridge is emptied, the stapler cannot be used again before the spent staple cartridge is replaced. The '519 patent is a reissue of U.S. Patent No. 4,892,244 ('244).
 
 
 3
 The reissue patent discloses several embodiments which work similarly. Illustratively, Fig. 1 of the reissue patent, reproduced below, depicts a stapler 10[1] comprising an upper jaw 20, a firing means 30, a lower jaw 40 and a staple cartridge 50 which fits within lower jaw 40. During operation, firing knob 42 is pushed forward which causes both knife 34 and pusher bars 32 (also known as "cam bars") to advance. As knife 34 creates an incision, pusher bars 32 enter slots 33 (shown in Fig. 2 below) in the staple cartridge where they engage staple drivers and cause the staple drivers to eject staples along the two sides of the incision.
 
 
 4
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 
 Also reproduced below is Fig. 2 of the reissue patent which is an elevation view of the lockout mechanism during firing of the stapler. As shown in Fig. 2, lockout mechanism 90 comprises a strip 92, a barrier lock 96 biased to enter slots 33, and a restraining member 98 to inhibit barrier lock 96 from entering slots 33. As the stapler is fired, pusher bars 32 slide forward until they reach and engage the front end 94 of strip 92, thus sliding strip 92 forward. As a result, restraining member 98 slides forward to a point where it no longer inhibits barrier 96. At this point in the firing, however, barrier 96 is still not able to enter slots 33 because of the presence of pusher bars 32. As the pusher bars 32 are retracted, however, barrier 96 enters slots 33 and prevents pusher bars 32 from reentering slots 33. In this way, barrier 96 prevents the stapler from being refired.
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 
 5
 William D. Fox et al., assignors to Ethicon, applied for and received the '244 patent, which issued on January 9, 1990. Claim 6 of that patent, the only claim from the original patent which is at issue in this case, recites:
 
 
 6
 In a staple cartridge insertable within a surgical stapler and containing staples and comprising an elongated body including one or more longitudinal slots for slidably receiving one or more longitudinal pusher bars comprising a firing mechanism of said surgical stapler, and a plurality of drivers engageable by said pusher bars for ejecting the staples from the cartridge, said staple cartridge releasably fastened to a said surgical stapler,
 
 
 7
 the improvement comprising a lockout mechanism connected to said longitudinal slots for preventing said pusher bars from passing more than one time through said longitudinal slots.
 
 
 8
 (emphasis added).
 
 
 9
 Subsequently, Ethicon became concerned that this claim might not read on several lockout mechanisms employed by its competitor U.S. Surgical. As is illustratively shown in the trial exhibit drawings reproduced below, the lockout mechanism on U.S. Surgical's open staplers functions by impeding the cam bar retainer, rather than the pusher bars.[2] In addition, U.S. Surgical's endoscopic staplers utilize a somewhat different lockout mechanism which engages another portion of the firing assembly called the "actuating channel." Arguably, then, U.S. Surgical's lockouts do not infringe claim 6 because they do not comprise a barrier which enters the longitudinal slots to prevent the pusher bars from reentering the staple cartridge.NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 
 Seeking to broaden its claims to cover U.S. Surgical's product, Ethicon put its patent into reissue. One of these broader claims, claim 24, is asserted by Ethicon against U.S. Surgical in this case. Claim 24 recites:
 A surgical stapler comprising
 a frame,
 a cartridge filled with staples and positionable in operative association with said frame and having one or more slots,
 a firing assemblage including a pusher assembly moveable relative to said frame, said pusher assembly comprising one or more pusher bars respectively extending through said slots to fire said staples,
 a member operatively connected to said pusher assembly for moving the pusher assembly in a firing direction down a path to fire the staples, and in a direction opposite to said firing direction to a retracted position after at least a portion of the staples have been fired,
 a lockout mechanism for preventing firing movement of the pusher assembly in the firing direction after the pusher assembly has been moved to the retracted position, said lockout mechanism including a barrier assemblage for preventing movement of the pusher assembly from said retracted position, said barrier assemblage comprising a resilient projecting member normally biased toward a position to engage said pusher assembly to prevent movement of said pusher assembly relative to said resilient projecting member after said pusher assembly has been moved to said retracted position, and
 a restraining structure separate from said pusher bar for blocking said barrier assemblage to maintain said resilient projecting member out of the path of the pusher assembly during staple firing, said restraining structure being moveable by said pusher assembly during movement of the pusher assembly in the firing position whereby the barrier assemblage is released to allow the resilient projecting member to move into the path of the pusher assembly to prevent firing movement of said pusher assembly after movement thereof to said retracted position.
 (emphasis added).
 Facially, the primary distinction between claims 6 and 24 is that claim 6 seems to tie the location of the lockout mechanism to the slots through which the pusher bars pass, while claim 24 broadly describes the location of the lockout as anywhere in the path of the pusher assembly.
 One week after its patent was reissued on January 25, 1994, Ethicon sued U.S. Surgical for infringement asserting that several of U.S. Surgical's staplers infringed claims 6 and 24 of the '519 patent. Discovery was conducted and the case was set for jury trial on April 10, 1994. On the eve of trial, however, we issued our in banc decision in Markman v. Westview Instruments, Inc., 52 F.3d 967, 34 USPQ2d 1321 (Fed.Cir.1995) (in banc), aff'd, --- U.S. ----, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 USPQ2d 1461 (1996), in which we held that claim interpretation is for the judge, not the jury, to determine. As a result, the parties agreed that a pre-trial Markman hearing would be beneficial to determine the scope of the claims at issue.
 A five day hearing was held, at the close of which the district court interpreted the claims. On the basis of the claim language and the prosecution history, the district court concluded that both claims 6 and 24 must be read narrowly as requiring the lockout mechanism to engage the pusher bars rather than any other portion of the firing assembly. Since U.S. Surgical's lockout barriers do not engage the pusher bars, but instead engage the cam bar retainer or other portions of the firing assembly, the district court proceeded to hold, as a matter of law, that U.S. Surgical's staplers do not literally infringe claims 6 or 24 of the '519 patent. In addition, the district court seems to have determined as a matter of law that U.S. Surgical's staplers do not infringe under the doctrine of equivalents since the judgment from the district court dismisses Ethicon's suit with prejudice. The district court, however, presented no findings to explain its doctrine of equivalents holding.
 Ethicon appeals from the district court's judgment. With respect to literal infringement, Ethicon contends that the district court read claims 6 and 24 too narrowly and that those claims are broad enough to cover devices in which the lockout barrier engages portions of the firing assembly other than the pusher bars. Additionally, Ethicon asserts that it was inappropriate for the Court to grant judgment as a matter of law on the doctrine of equivalents at the close of the Markman hearing. Ethicon believes that disputed issues of fact remain with respect to infringement by equivalents and that it is entitled to a jury trial on those issues. We have jurisdiction to review the district court's judgment under 28 U.S.C. § 1295(a)(1) (1994).
 II
 Claim construction is a matter of law which we review de novo. See Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1581-82 (Fed.Cir.1996) (citing Markman, 52 F.3d at 979, 34 USPQ2d at 1329).
 We agree with the district court's interpretation of claim 6. Initially, we note that claim 6 is a Jepson claim. See Ex parte Jepson, 243 O.G. 525 (Ass't Comm'r Pat.1917). Consequently, the inventive portion of the claim must lie in the clause beginning: "the improvement comprising." See In re Simmons, 50 C.C.P.A. 990, 312 F.2d 821, 824 (1963). As is evident, that clause says nothing about the structure of the lockout mechanism; it describes only the lockout's location and function. As to location, the claim states that the lockout is "connected to said longitudinal slots." We agree with the district court that in the context of this claim one of ordinary skill would understand this limitation to mean that the lockout barrier enters the longitudinal slots and thus blocks the pusher bars from passing through the slots when a second firing of the stapler is attempted.
 Several considerations support this conclusion. Looking first at the claim itself, we note that the functional language at the end of the claim recites that the purpose of the lockout is to prevent the pusher bars from passing again through the longitudinal slots, rather than describing in more general terms that the function is to prevent refiring of the stapler. This is some indication that what is being described is an operative relationship between the lockout barrier and the longitudinal slots.
 In addition, as the district court noted, the claim's preamble places the lockout mechanism "in a staple cartridge." "Staple cartridge" is a term used in the '519 specification to describe element 50 of Fig. 1 above. The only interaction between the staple cartridge and the firing assembly occurs when the pusher bars (and knife) pass through the longitudinal slots. This demonstrates that claim 6 is limited to an apparatus which blocks the pusher bars rather than more distal portions of the firing assembly, such as the cam bar retainer.
 On this point, Ethicon argues that the term "staple cartridge" should not be defined with reference to the specification, but rather should be understood broadly to include any portion of the surgical stapler which is "insertable within and releasably fastened to" the stapler. Citing Electro Medical Systems, S.A. v. Cooper Life Sciences, Inc., 34 F.3d 1048, 1054, 32 USPQ2d 1017, 1021 (Fed.Cir.1994), for the proposition that particular embodiments from the specification should not be read into the claims, Ethicon urges that it is inappropriate to import the meaning of "staple cartridge" from the specification into this claim. Ethicon further points out that the cartridge in U.S. Surgical's staplers comprise more than just stapler cartridge 50 shown in Fig. 1 above, but additionally includes the entire firing means 30, including the pusher bars, the knife, the cam bar retainer, and the lockout mechanism. Consequently, under a broad interpretation of the term "staple cartridge," Ethicon asserts that its claim reads on U.S. Surgical's staplers.
 Ethicon's reliance on Electro Medical, however, is misplaced. Here, the district court did not import an additional limitation into the claim; instead, it looked to the specification to aid its interpretation of a term already in the claim, an entirely appropriate practice. See Autogiro Co. of America v. United States, 181 Ct.Cl. 55, 384 F.2d 391, 397-98, 155 USPQ 697, 702-03 (1967). The specification unambiguously describes the staple cartridge as a separate element distinct from the firing means. Consequently, the district court properly deduced that the term "staple cartridge" in the claim precludes the lockout from being located on the firing means.
 Ethicon also challenges the district court's claim interpretation on the ground that the term "connected to" in the phrase "connected to the slots" should be read broadly to include two distant elements which are "connected" by intervening elements. Thus, Ethicon argues, even if, as in the accused devices, the lockout mechanism is located in another portion of the surgical stapler, it is still indirectly "connected to" the longitudinal slots, and thus Ethicon's claim 6 literally reads on it.
 We acknowledge that the term "connected to" could, in other contexts, be broadly construed. Nevertheless, in the context of this claim, the district court correctly concluded that the entire phrase "connected to said longitudinal slots" must be read narrowly. First, in what meaningful sense is it possible to "connect" the restraining member, which is a physical item, with the longitudinal slots, which are hollow passageways, unless "connected to" is understood to mean that the restraining member operatively interacts with the longitudinal slots by blocking them? Second, Ethicon's argument proves too much. If, as Ethicon argues, "connected to" should be read broadly to include elements which are connected directly or indirectly, then this language would read on a lockout mechanism located anywhere in the surgical stapler, and the "connected to" limitation would be meaninglessly empty.
 We have also considered Ethicon's additional arguments based on the prosecution history which allegedly shows that the examiner viewed claim 6 as including a lockout mechanism located in other portions of the surgical stapler. They are insufficient, however, to overcome our strong sense that claim 6 is directed to a lockout mechanism which functions by blocking the longitudinal slots in the staple cartridge so as to inhibit the pusher bars from passing through the longitudinal slots once the staples in the cartridge have been fired. We therefore affirm the district court's interpretation of claim 6. Since there are no genuine issues of material fact with respect to the structure of U.S. Surgical's staplers, we also affirm the district court's holding that claim 6 is not literally infringed.
 III
 Turning to claim 24, we agree with Ethicon that the claim reads on a lockout mechanism which engages portions of the firing means other than the pusher bars. We therefore do not affirm the district court's judgment of noninfringement on the ground articulated by the district court.
 Here, the dispute between the parties centers around the term "pusher assembly." According to Ethicon, the "pusher assembly" encompasses not only the pusher bars recited in the claim, but additionally includes the cam bar retainer which holds the pusher bars. Although not separately described in the '519 specification, the cam bar retainer constitutes one element of the firing means 30 in Fig. 1 of the '519 patent; it is the far left element of the firing means. As a result, Ethicon asserts that those of U.S. Surgical's lockouts which engage the cam bar retainer literally infringe this claim. U.S. Surgical, on the other hand, contends that "pusher assembly" is merely a synonym for "pusher bars," and that claim 24, like claim 6, is limited to a lockout which engages the pusher bars.
 The district court began its analysis by noting that the claim itself does not define the makeup of the "pusher assembly" beyond stating that it "compris[es] one or more pusher bars." Furthermore, the term "pusher assembly" is not used or defined anywhere in the '519 specification, so the specification provides minimal guidance as to the meaning of this claim term. The district court also noted that neither party's proposed claim interpretation was necessarily inconsistent with other portions of claim 24, or with the rest of the patent document as a whole. Cf. Markman, --- U.S. at ----, 116 S.Ct. at 1395, 38 USPQ2d at 1470 (noting the possibility that two proposed claim interpretations will each be "consistent with [the] patent's internal logic"). Consequently, the district court determined that the scope of the term "pusher assembly" was ambiguous.
 Faced with what it considered an ambiguous term, the district court adopted U.S. Surgical's narrow claim interpretation over Ethicon's broader proposal, stating: "we return to the view that since Ethicon sought reissue for the specific purpose of extending Fox's invention to cover U.S. Surgical's lockout, some unambiguous disclosure of that coverage should be found in Claim 24." Since reissue claim 24 did not, in the district court's opinion, unambiguously cover the allegedly infringing staplers, the district court adopted a claim interpretation under which the staplers do not infringe. The district court additionally bolstered its claim interpretation with two pieces of prosecution history which it believed supported its interpretation of the claim. Accordingly, it held that "pusher assembly" means the same as "pusher bars," and determined as a matter of law that U.S. Surgical's staplers do not infringe claim 24 since U.S. Surgical's lockout does not engage the pusher bars.
 We need not pass on the district court's reasoning that reissue claims sought for the purpose of covering a specific competitor's product must unambiguously read on the allegedly infringing product, because we conclude that claim 24 is not, with respect to whether the pusher assembly comprises the cam bar retainer, ambiguous. Like the district court, we begin with the language of the claim itself. Admittedly, the claim says little about the structure of the "pusher assembly." It does clearly imply, however, that whatever "pusher assembly" means, it is not a synonym for "pusher bar." For example, the claim recites:
 a restraining structure separate from said pusher bar for blocking said barrier assemblage to maintain said resilient projecting member out of the path of the pusher assembly during staple firing.
 (emphasis added). If the terms "pusher assembly" and "pusher bar" described a single element, one would expect the claim to consistently refer to this element as either a "pusher bar" or a "pusher assembly," but not both, especially not within the same clause. Therefore, in our view, the plain meaning of the claim will not bear a reading that "pusher assembly" and "pusher bar" are synonyms.
 The question remains, though, what is the meaning of the term "pusher assembly"? The answer to that question lies in the '519's prosecution history. The term "pusher assembly" entered Ethicon's lexicon as part of an attempt by Ethicon to have an interference declared between its patent and a second patent issued to Tompkins et al. (Tompkins) and owned, not surprisingly,[3] by U.S. Surgical. Like U.S. Surgical's commercial embodiments, Tompkins discloses and claims a lockout mechanism which engages the cam bar retainer.
 In support of its request for an interference, Ethicon copied claim 1 of Tompkins and submitted a chart to the U.S. Patent Office in which it asserted that Fox disclosed each element of the claim. In relevant part, that chart stated:
 [Tompkins' claim] [Ethicon's comments]
A surgical fastening apparatus Applicants [i.e., Fox] disclose a
 comprising: surgical stapler 10
... ...
a pusher assembly slidably mounted on Applicants disclose a pusher bar 32 that
 said cartridge frame ..., said is mounted between the upper jaw 20
 pusher assembly having at least one and lower jaw 40 that form the
 cam bar longitudinally movable cartridge frame. The bar 32 slidably
 through said cartridge [to engage moves within longitudinal slot 33 of
 staple drivers]; the cartridge to sequentially engage
 the drivers 52 ....
and a cam bar retainer for mounting Applicants disclose a firing means 30
 said at least one cam bar; and whereon a cam bar 32 is retained.
locking mechanism means engageable Applicants disclose a locking mechanism
 with said cam bar retainer for including a barrier lock 96 that
 preventing reactuation of the engages with the cam bar 32 to prevent
 surgical stapling apparatus. reactuation of the stapler. The
 aforementioned teaching is the same
 since to engage the cam bar is no
 different that engaging a retainer
 that holds the cam bar.
 As this chart demonstrates, the term "pusher assembly" in Tompkins' claim is not used as a synonym for "pusher bar." Instead, it describes an "assembly"[4] which comprises, at a minimum, the pusher bars as well as the cam bar retainer.[5]
 In response, U.S. Surgical argues that Ethicon cannot rely on Tompkins' disclosure to define the term "pusher assembly" since claim 24 demonstrably uses the term differently than Tompkins' specification. Specifically, Tompkins' specification defines the "pusher assembly" as including the firing knob, while claim 24 describes the firing knob as a distinct element separate from the "pusher assembly." This argument is not without some merit. In our view, however, the prosecution history as a whole would convey to one of ordinary skill that Ethicon intended to employ the term "pusher assembly" as used in Tompkins' claim, rather than as used in Tompkins' specification. We therefore hold that the term "pusher assembly" in claim 24 encompasses both the pusher bars and the cam bar retainer.
 In view of our holding in Athletic Alternatives, Inc. v. Prince Manufacturing, Inc., 73 F.3d 1573, 37 USPQ2d 1365 (Fed.Cir.1996) (AAI ), however, we do not believe that the term "pusher assembly" can be interpreted as covering any additional elements other than the pusher bars and the cam bar retainer. In AAI, we held that a patent claim may be interpreted only as broadly as its unambiguous scope. AAI, 73 F.3d at 1581, 37 USPQ2d at 1372. There, AAI had patented a stringing arrangement for tennis rackets in which the strings were offset at distances which "varie[d] between" a minimum and a maximum distance from the racket's central plane. AAI, 73 F.3d at 1577, 37 USPQ2d at 1369. Both parties conceded that the phrase "varie[d] between" unambiguously covered a stringing arrangement in which three or more offset distances were employed. Id. Both also conceded that a stringing arrangement which employed only a single offset distance was anticipated by the prior art. AAI, 73 F.3d at 1575, 37 USPQ2d at 1367. The question in the case was whether AAI's claim was sufficiently broad to cover a stringing arrangement which employed exactly two offset distances. After examining in great detail the patent document and its prosecution history, we concluded that, at the edges, the reach of the claim was ambiguous, and that we could not tell to a satisfactory degree of certainty whether it read on a racket with only two offset distances. AAI, 73 F.3d at 1578-81, 37 USPQ2d at 1370-72. Having so concluded, we held, derived from our understanding of the second paragraph of 35 U.S.C. § 112 (1994), that to the extent that the claim is ambiguous, a narrow reading which excludes the ambiguously covered subject matter must be adopted. AAI, 73 F.3d at 1581, 37 USPQ2d at 1372.
 Here, too, we have expended significant effort endeavoring to ascertain the proper construction of the term "pusher assembly" in claim 24. As has already been noted, the '519 specification provides minimal guidance on this question. Similarly, as U.S. Surgical points out, the Tompkins' specification which originated the term is of little, if any, help. Without more explicit alternatives, we have been forced to spend a significant quantity of time carefully sifting through each piece of the reissue prosecution history made part of the appellate record in an effort to discover the term's proper meaning. As noted above, that reading convinces us that the "pusher assembly" unambiguously includes the cam bar retainer in addition to the pusher bars expressly recited in the claim.
 More than that, however, we cannot say. On the one hand, an argument could be made that Ethicon intended the term "pusher assembly" essentially as a synonym for its firing means 30. Compare Joint Appendix at 3044 ("the original claims did not specify, as broadly as applicants had a right to claim ... a lockout mechanism that ... blocks the firing means and prevents refiring of the stapler" (emphasis added)) with Joint Appendix at 3127 ("The essence of applicants' invention is the provision of a lockout mechanism in a surgical stapler that is actuated during initial longitudinal movement of a firing means such as a pusher assembly." (emphasis added)) and Joint Appendix at 3134 ("the essence of applicants' invention ... provides that when the pusher assembly is retracted after longitudinal movement, a locking mechanism will be activated to prevent subsequent longitudinal movement." (emphasis added)). On the other hand, in many of the reissue claims, Ethicon implied that they are not synonyms by employing both terms in the same claim and reciting that the firing means "includes" the pusher assembly. See, e.g., Joint Appendix at 3417 (claim 17 of the '519 patent which recites "a firing means including a pusher assembly"). Consequently, we conclude that the term "pusher assembly" unambiguously describes only the pusher bars and the cam bar retainer, but does not unambiguously cover any other portions of the '519 patent's firing means.
 In view of the above, Ethicon's claim 24 would read on a lockout which engaged the cam bar retainer, such as U.S. Surgical's open linear cutters, while it would not read on a lockout which engaged any other portion of the firing means, such as U.S. Surgical's endoscopic lockouts.[6] Since at least some of U.S. Surgical's staplers comprise a lockout which engages the cam bar retainer, we do not affirm the district court's judgment of noninfringement with respect to claim 24 on the ground articulated by the district court.[7]
 Our task, however, is not over. We must affirm the decision of the district court if it is supported by any ground properly preserved on appeal. See Datascope Corp. v. SMEC, Inc., 879 F.2d 820, 822 n. 1, 11 USPQ2d 1321, 1322 n. 1 (Fed.Cir.1989) ("Appellees always have the right to assert alternative grounds for affirming the judgment that are supported by the record."), cert. denied, 493 U.S. 1024, 110 S.Ct. 729, 107 L.Ed.2d 747 (1990). Here, U.S. Surgical contends that it does not infringe claim 24 on an additional ground not relied on by the district court. Specifically, claim 24 recites that the lockout barrier (i.e., resilient projecting member) is maintained "out of the path of the pusher assembly during staple firing." As Ethicon candidly conceded at oral argument, however, U.S. Surgical's lockout mechanism releases the barrier into the path of the pusher assembly before any staples are fired. Thus, U.S. Surgical's lockout does not, on its face, literally infringe claim 24.
 In response, Ethicon argues that other portions of the claim as well as the prosecution history make it clear that "it is irrelevant whether the [barrier is still restrained] as the staples are actually being ejected" and that successful operation of the lockout requires only that the barrier be restrained long enough for the firing assembly to begin movement in the firing direction. Ethicon's argument simply does not address the fact that U.S. Surgical's barrier is in the path of the pusher assembly before any staples are fired. Ethicon's reliance on other claim language to overcome this fact invites us to read its "during staple firing" limitation out of the claim. This we cannot do. See Exxon Chemical Patents, Inc. v. Lubrizol Corp., 64 F.3d 1553, 1557, 35 USPQ2d 1801, 1804 (Fed.Cir.1995) (recognizing that "[w]e must give meaning to all the words in [the] claims").
 The claim recites that the barrier is maintained out of the path of the pusher assembly "during staple firing." The plain meaning of this limitation requires that the barrier remain outside the path of the pusher assembly until at least some of the staples have been fired. Ethicon need not have included this limitation in its claim. Having done so, it must live with the language it chose. Since U.S. Surgical's lockout admittedly releases the barrier prior to the firing of any staples, we affirm the district court's judgment that U.S. Surgical does not literally infringe claim 24 of the '519 patent.
 IV
 At the conclusion of its opinion, the district court dismissed Ethicon's complaint with prejudice. From this it would appear that the district court granted summary judgment to U.S. Surgical with respect to both literal infringement and infringement under the doctrine of equivalents. On this appeal, the parties dispute whether the posture of the case at the close of the Markman hearing permitted the grant of summary judgment on the issue of infringement by equivalents. Ethicon contends that the Markman hearing established only the literal meaning of the claims, but that genuine issues of material fact may remain with respect to infringement by equivalents. According to Ethicon, the district court never decided whether such issues of fact exist, and therefore could not, at this stage in the proceedings, grant summary judgment on this issue. U.S. Surgical, in contrast, contends that the question of infringement by equivalents was litigated as part of the Markman hearing and that, on this record, summary judgment in their favor with respect to infringement by equivalents is warranted.
 Infringement under the doctrine of equivalents frequently turns on questions of fact, such as whether the allegedly infringing device performs substantially the same function in substantially the same way to achieve substantially the same result as the claimed invention. See Hilton Davis Chemical Co. v. Warner-Jenkinson Co., Inc., 62 F.3d 1512, 1518, 1520-21, 35 USPQ2d 1641, 1645, 1647 (Fed.Cir.1995), cert. granted, --- U.S. ----, 116 S.Ct. 1014, 134 L.Ed.2d 95 (1996). The district court did not provide findings with respect to whether any such triable issues of fact remain in this case. We cannot even tell from the record whether the issue was briefed and argued to the district court. Consequently, to the extent that the district court's judgment constituted a grant of summary judgment of noninfringement under the doctrine of equivalents in favor of U.S. Surgical, we vacate that portion of the judgment and remand to the district court to articulate whether any triable issues of fact with respect to infringement by equivalents exist. If none exist, summary judgment in U.S. Surgical's favor may be appropriate. Otherwise, trial on this issue, and resolution of any other issues remaining in the case (e.g., validity) would be appropriate.
 V
 For the reasons described above, the judgment of the district court is
 AFFIRMED-IN-PART, VACATED-IN-PART, and REMANDED. No costs.
 
 
 [1]
 Two types of staplers are at issue in this case. The first are called "open" staplers and are used in conventional surgery. The second are called "endoscopic" staplers and are used in endoscopic surgery. The stapler shown in the '519 patent is an open stapler
 
 
 [2]
 The cam bar retainer holds the pusher bars and is located behind the pusher bars in the stapler's firing assembly
 
 
 [3]
 In its opinion denying Ethicon's motion for a preliminary injunction, the district court pointed out that Ethicon and U.S. Surgical are, for practical purposes, the only two manufacturers of the type of surgical staplers involved in this suit. Ethicon Endo-Surgery v. United States Surgical Corp., 855 F.Supp. 1500, 1505 (S.D.Ohio 1994)
 
 
 [4]
 Although not necessary to resolve this case because of the clear prosecution history, we note in passing that the word "assembly" itself implies a multi-component apparatus. The McGraw Hill Dictionary of Scientific and Technical Terms 133 (4th ed.1989), for example, defines "assembly" as: "A unit containing the component parts of a mechanism, machine, or similar device."
 
 
 [5]
 That the cam bar retainer is part of the pusher assembly is evident from the fact that recitation of the cam bar retainer is prefaced by the word "and." If the cam bar retainer was not part of the pusher assembly, then cam bar retainer would simply be the penultimate limitation in the claim and would not be prefaced by the word "and." In addition, comparison of Tompkins' claim 1 with Ethicon's chart reveals that the chart contains a typographical error. In Tompkins' claim, the cam bar and cam bar retainer recitations are separated by a comma, another indication that both elements are part of the pusher assembly; the chart, in contrast, mistakenly separates those elements with a semicolon
 Ironically, this chart was one of the pieces of prosecution history relied on by the district court to support its holding that the "pusher assembly" consists only of the pusher bars. In doing so, the district court was apparently misled by the fact that row 3, column 1 of the chart begins with the phrase "a pusher assembly slidably mounted on said cartridge frame" which Ethicon (in row 3, column 2) seems to equate with its pusher bars 32. As we have noted, however, a better reading of the chart is that the "pusher assembly" comprises two components: the cam bars (row 3) and a cam bar retainer (row 4), both of which, Ethicon contended, are disclosed in Fox's specification.
 
 
 [6]
 On similar grounds we reject Ethicon's argument that U.S. Surgical's endoscopic lockout literally meets claim 24's limitation requiring "movement [of the pusher assembly] to [a] retracted position." As noted above, the term "pusher assembly" includes only the pusher bars and the cam bar retainer. U.S. Surgical's endoscopic staplers, however, do not appear to contain a cam bar retainer and the pusher bars are not retracted after firing but rather are left in the forward position
 
 
 [7]
 The district court also misinterpreted the second piece of prosecution history which it cited in support of its interpretation. During the reissue proceedings, the examiner rejected claim 1 of the original '244 patent which recited a lockout mechanism located "on the stapler" saying: "there is no support in the [Fox] specification for a lockout mechanism that is mounted to the stapler.... The disclosed mechanism is mounted to the cartridge;" and "[c]laim 1 implies that the lockout mechanism is not part of the cartridge." From these statements, the district court erroneously inferred that the examiner considered all of the claims to be limited to a lockout mechanism located on the staple cartridge. In doing so, the district court confused a claim not supported by the specification, which is not allowable, with a broad claim, which is
 Claim 1 was properly rejected because it recited an element not supported by Fox's disclosure, i.e., a lockout "on the stapler." It does not follow, however, that Fox's disclosure could not support claims sufficiently broad to read on a lockout off of the cartridge. See, e.g., In re Vickers, 141 F.2d 522, 525, 31 C.C.P.A. 985, 61 USPQ 122, 125 (1944) ("an applicant ... is generally allowed claims, when the art permits, which cover more than the specific embodiment shown.") If Fox did not consider the precise location of the lockout to be an element of his invention, he was free to draft claim 24 broadly (within the limits imposed by the prior art) to exclude the lockout's exact location as a limitation of the claimed invention. See 35 U.S.C. § 112 (1994) (allocating to the inventor the task of claiming what "the [inventor] regards as his invention." (emphasis added)). Such a claim would not be unsupported by the specification even though it would be literally infringed by undisclosed embodiments. The district court should not have imposed on claim 24 an additional limitation which it does not contain.