NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1258

FISHER-PRICE, INC,

Plaintiff-Appellant,

v.

GRACO CHILDREN'S PRODUCTS, INC.
and NEWELL RUBBERMAID, INC.,

Defendants-Appellees.

---

DECIDED: November 4, 2005

---

Before MAYER, SCHALL, and LINN, <u>Circuit Judges</u>.

SCHALL, <u>Circuit Judge</u>.

## DECISION

Fisher-Price, Inc. ("Fisher-Price") appeals from the final decision of the United States District Court for the Eastern District of Pennsylvania (i) holding claims 6 and 7 of United States Patent No. 6,520,862 (the "'862 patent") invalid by reason of indefiniteness and (ii) dismissing Fisher-Price's suit against Graco Children's Products, Inc. ("Graco") and Newell Rubbermaid, Inc. ("Newell") for infringement of claims 6 and 7. <u>Fisher-Price, Inc. v. Graco Children's Prods., Inc.</u>, No. 03-5405, 2005 WL 408040, at

*1 (E.D. Pa. Feb. 17, 2005) ("Summary Judgment").  Because we conclude that the district court erred in its determination that claims 6 and 7 are indefinite, we reverse and remand.

DISCUSSION

I.

Fisher-Price is the owner of the '862 patent.  The patent is directed to a collapsible infant swing having two configurations: a deployed configuration and a storage configuration.  Figure 6 of the patent depicts an embodiment of the claimed invention.



Figure 6 shows a collapsible infant swing (100) with a shield (400) coupled to a seat (190).  The seat has a removable cover (180) that defines a seating surface between support posts (210).  '862 patent, col. 3, ll. 8-9, col. 3, ll. 29-30.  The support posts are connected to a base (150), which pivots around a pivot point (510), while a cross member (300) is coupled between the upper ends of the support posts.  '862 patent, col. 2, ll. 20-26, col. 2, ll. 39-40, col. 4, l. 37.  Figure 6 also shows a positioning member

(500) and a swing arm (252). '862 patent, col. 3, ll. 2-3, col. 4, l. 36. Claim 6 of the '862 patent recites:

> An infant swing comprising:
>
> an upward extending frame support post;
>
> a swing arm pivotally coupled to an upper end of said frame support post and extending in a downward direction from said upper end of said frame support post;
>
> a seat coupled to said swing arm and having an upper seating surface;
>
> said swing arm and said frame support post defining a reconfigurable swing area therebetween;
>
> a shield coupled to said seat and extending upwardly from said seat and disposed between said reconfigurable swing area and said seating area.

'862 patent, col. 6, ll. 30-43. Claim 7 depends from claim 6. It claims the infant swing of claim 6 "wherein said shield is formed of open mesh fabric." '862 patent, col. 6, ll. 44-45.

II.

Graco is a manufacturer of children's products, including infant swings. Newell is Graco's corporate parent. Fisher-Price sued Graco and Newell for infringement of claims 6 and 7 of the '862 patent. Upon doing so, it sought a preliminary injunction, which was denied by the district court. Fisher-Price, Inc. v. Graco Children's Prods., Inc., No. 03-5405, 2003 WL 22797891, at *2 (E.D. Pa. Nov. 19, 2003). Subsequently, the district court held a Markman hearing, after which it found several limitations of the claims at issue indefinite. Fisher-Price, Inc. v. Graco Children's Prods., Inc., No. 03-5405, 2004 WL 1320901, at *1-2 (E.D. Pa. June 14, 2004) ("Claim Construction").

Accordingly, the court granted summary judgment of invalidity in favor of Graco and Newell and dismissed Fisher-Price's suit. Summary Judgment at *1. Fisher-Price now appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

III.

The definiteness requirement originates from 35 U.S.C. § 112 ¶ 2. The statute provides that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112 ¶ 2. If a claim fails to satisfy the definiteness requirement, it is invalid. Bancorp Servs., L.L.C. v. Hartford Life Ins. Co., 359 F.3d 1367, 1371 (Fed. Cir. 2004). "In ruling on a claim of patent indefiniteness, a court must determine whether those skilled in the art would understand what is claimed when the claim is read in light of the specification." Id.; Exxon Research and Eng'g Co. v. United States, 265 F.3d 1371, 1375 (Fed. Cir. 2001). "A claim is indefinite if its legal scope is not clear enough that a person of ordinary skill in the art could determine whether a particular composition infringes or not." Geneva Pharm., Inc. v. GlaxoSmithKline PLC, 349 F.3d 1373, 1384 (Fed. Cir. 2003); accord Exxon Research, 265 F.3d at 1375.

The Exxon Research court explained that a claim will not be invalidated for indefiniteness without a severe defect.

> [W]e have not held that a claim is indefinite merely because it poses a difficult issue of claim construction. We engage in claim construction every day, and cases frequently present close questions . . . . We have not insisted that claims be plain on their face in order to avoid condemnation for indefiniteness; rather, what we have asked is that the claims be amenable to construction, however difficult that task may be. If a claim is insolubly ambiguous, and no narrowing construction can properly be adopted, we have held the

05-1258                                          4

> claim indefinite. If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds.

265 F.3d at 1375 (citing Modine Mfg. Co. v. United States Int'l Trade Comm'n, 75 F.3d 1545, 1557 (Fed. Cir. 1996) (emphasis added) (rejecting indefiniteness argument after claim construction; and stating that "when claims are amenable to more than one construction, they should when reasonably possible be interpreted to preserve their validity.")). We declared in Exxon Research that "[b]y finding claims indefinite only if reasonable efforts at claim construction prove futile, we accord respect to the statutory presumption of patent validity, and we protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal." Id. (internal citations omitted).

"A determination that a patent claim is invalid for failure to meet the definiteness requirement of 35 U.S.C. § 112, ¶ 2 is a conclusion 'that is drawn from the court's performance of its duty as the construer of patent claims and therefore, like claim construction, is a question of law' as to which we exercise plenary review." Bancorp Servs., 359 F.3d at 1371 (quoting Atmel Corp. v. Info. Storage Devices, Inc., 198 F.3d 1374, 1378 (Fed. Cir. 1999); accord Exxon Research, 265 F.3d at 1376 ("A decision holding a patent invalid for indefiniteness presents a question of law, which we review de novo . . . . We therefore reject Exxon's argument that the issue of indefiniteness turns on an underlying factual dispute that should not have been resolved as a matter of law on summary judgment.").

IV.

The district court ruled that the following limitations of claim 6 of the '862 patent are indefinite:

> a seat coupled to said swing arm and having an upper seating surface;
>
> said swing arm and said frame support post defining a reconfigurable swing area therebetween;
>
> a shield coupled to said seat and extending upwardly from said seat and disposed between said reconfigurable swing area and said seating area.

'862 patent, col. 6, ll. 36-42. On appeal, Fisher-Price argues that the court erred in its rulings with respect to each of these limitations. We address each limitation in turn.

A.      "[A] seat coupled to said swing arm and having an upper seating surface"

The district court stated:

> "[A] seat coupled to said swing arm and having an upper seating surface" is indefinite. The meaning of "upper seating surface" is unclear. Fisher-Price defines the "upper seating surface" as the entire top surface of the seat (and concomitantly defining at the hearing the lower seating surface as the underside of the swing). Fisher-Price's definition would apply to every seat, but the patent distinguishes the swing as having an upper seating surface, thus implying that not every seat would have an "upper seating surface."

Claim Construction at *1.

Fisher-Price argues that the district court erred because the limitation "upper seating surface" is not insolubly ambiguous. Fisher-Price contends that the limitation is susceptible to two possible constructions. According to Fisher-Price, the correct construction is the one it urged in the district court. Under that construction, the "upper seating surface" is "[t]he top surface of the seat on which the child rests, including the

05-1258                                      6

portion substantially adjacent the child's head and the portion substantially adjacent the child's feet." An alternative construction, Fisher-Price urges, is the one suggested by the district court during the Markman hearing. Under that construction, "upper" in "upper seating surface" refers only to some subset of points that define the "seating surface," such as the portion of the seating surface located near the infant's head or torso rather than the infant's legs and bottom.

Graco responds that the district court did not err in its ruling that the limitation "upper seating surface" is indefinite. Graco points out that neither "seating surface" nor "upper seating surface" is mentioned in the specification of the '862 patent, and like the district court, it maintains that because of the "inherent differentiation" between "upper" and "lower" seating surface, the limitation is insolubly ambiguous.

The district court erred in finding the limitation "upper seating surface" indefinite. The technology involved in the invention of the '862 patent is not complex; it is readily understood by both the expert and the layperson. Moreover, as Fisher-Price notes, the words used in the limitation are simple, with well-known ordinary meanings. Under these circumstances, we think the limitation "upper seating surface" can be construed without great difficulty, even if, as Graco points out, it is not mentioned in the specification. Indeed, not surprisingly, two very plausible constructions already have emerged. Finally, as far as the indefiniteness analysis is concerned, we think the district court's concern about differentiating between upper and lower seating surfaces is misplaced. In our view, whether "the patent distinguishes the swing as having an upper seating surface, thus implying that not every seat would have an upper seating surface," Claim Construction at *1, is a consideration not relevant to determining

whether the limitation is so unclear that "a person of ordinary skill in the art could [not] determine whether the [accused device] infringes or not." Geneva Pharm., 349 F.3d at 1384.

B.    "[S]aid swing arm and said frame support post defining a reconfigurable swing area therebetween"

The district court stated:

> "[S]aid swing arm and said frame support post defining a reconfigurable swing area therebetween" is indefinite. As Fisher-Price itself acknowledged, one of the drawings (Figure 7) is inaccurate. A person skilled in the art reviewing the patent as a whole, including the drawing, could not determine the "reconfigurable swing area."

Claim Construction at *2 (internal citations omitted). The inaccuracy of Figure 7 appears to be the district court's sole stated reason for declaring this limitation indefinite. The "reconfigurable swing area" is represented by "A" in Figures 5-7 shown below. '862 patent, col. 3, ll. 34-36.



Applying the claim language, the "reconfigurable swing area" is the area between the swing arm (252) and the frame support post (210). As the distance between the swing arm and the frame support post decreases, the swing area "A" decreases. In this way, an infant's limbs get pinched by being in a region that is eliminated by the boundaries of the region collapsing. Thus, "A" in Figure 7 identifies the wrong region.

Graco argues that Figure 7 possesses an error so severe that one skilled in the art would not know what region is being defined. Fisher-Price acknowledges the error in Figure 7, but argues that this does not justify a holding of indefiniteness because claim construction still is possible.

We agree with Fisher-Price. The clerical error in Figure 7 is not fatal because the claim language is unambiguous. It clearly defines the "reconfigurable swing area" as the area between the swing arm and the frame support post.[1] Moreover, the Detailed Description states, "The space between each support post 210 and corresponding swing arm 250 is a wedge-shaped swing area A that varies with the position of the swing arms 250." '862 patent, col. 3, ll. 33-35. In short, despite the error in Figure 7, one skilled in the art would know that the "reconfigurable swing area" is the region in which an infant's limb can be pinched, which must be the region between the swing arm and the frame support post. The limitation "reconfigurable swing area" is not indefinite.

C.      "[A] shield coupled to said seat and extending upwardly from said seat and disposed between said reconfigurable swing area and said seating area."

The district court found two parts of this claim limitation indefinite. The court first stated:

> "[A] shield coupled to said seat and extending upwardly from said seat" is indefinite. It is unclear whether the shield is to be coupled with the seat itself, the (undefined) "seating area", or the padded seat cover (if that is what is meant by "upper seating surface.")

Claim Construction at *2.

---

[1]      "[S]aid swing arm and said frame support post defining a reconfigurable swing area therebetween . . . ." '862 patent, col. 6, ll. 38-39.

In challenging the ruling of the district court, Fisher-Price states: "Nothing in the English language prevents an object that is located 'between' elements A and B also to be 'coupled to' . . . either A or B." Fisher-Price further states that "[t]he claim says nothing about where on the seat the coupling must occur . . . . [T]he law does not require patent claims to specify the exact location of components." Graco's primary contention is that the first part of the shield limitation is indefinite because neither the claim nor the specification say where the shield is to be coupled to the seat. In making this argument, Graco points to what it says is a conflict within the specification. The specification states that the shield can be integrally coupled "with the seat," while later stating that the shield is preferably coupled in taut configuration "between swing arms 250 and seat 190" to prevent the shield from deforming. '862 patent, col 3, ll. 44-49. Graco urges that the specification is inconsistent as to whether the shield is coupled "with" the seat or "between" the seat and the swing arms.

Again, we agree with Fisher-Price. Even if it could be said that a conflict exists within the specification, it is resolved by the unambiguous claim language, which teaches "a shield coupled to said seat." Given the clarity of the claim language, we are confident that insofar as the first part of the shield limitation is concerned, reasonable efforts at claim construction would not prove futile. See Exxon Research, 265 F.3d at 1375.

As far as the second part of the shield limitation is concerned, the district court stated:

> "[A]nd disposed between said reconfigurable swing area and said seating area" is indefinite. Seating area is nowhere defined in the patent. Fisher-Price's attempts to define the "upper seating surface" as the entire padded area and the

"lower seating surface" as the underside of the swing was unconvincing and against the ordinary meaning of the terms.

Claim Construction at *2. The district court thus found the second part of the shield limitation indefinite because the term "said seating area" lacked an antecedent basis. Fisher-Price argues that the district court erred. It contends that "upper seating surface" is the antecedent basis for "said seating area."[2] Graco responds that allowing "upper seating surface" to serve as the antecedent basis for "said seating area" essentially equates the terms, which Graco argues is impermissible. See Ethicon Endo-Surgery Inc. v. United States Surgical Corp., 93 F.3d 1572, 1579 (Fed. Cir. 1996) (stating that if the two claim terms at issue "described a single element, one would expect the claim to consistently refer to this element as either [one or the other of the two terms], but not both, especially not within the same clause").

A claim is not invalid for indefiniteness if its antecedent basis is present by implication. Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., No. 05-1043, 2005 WL 2403777, at *23 (Fed. Cir. 2005) (citing Slimfold Mfg. Co. v. Kinkead Indus., Inc., 810 F.2d 1113, 1116 (Fed. Cir. 1987)). It is our conclusion that, in this case,

---

[2]    The '862 patent claims:

> [A] seat coupled to said swing arm and having an <u>upper seating surface</u>;
>
> said swing arm and said frame support post defining a reconfigurable swing area therebetween;
>
> a shield coupled to said seat and extending upwardly from said seat and disposed between said reconfigurable swing area and <u>said seating area</u>.

'862 patent, col 3. ll. 36-42 (emphasis added).

"upper seating surface" is by implication the antecedent basis for "seating area." On that basis, we hold that the second half of the shield limitation of claim 6 is not indefinite.

For the foregoing reasons, the decision of the district court holding the asserted claims of the '862 patent indefinite and dismissing Fisher-Price's suit is reversed. The case is remanded to the district court for it to construe the asserted claims and to thereafter adjudicate Fisher-Prices' claim of infringement.