**ETHICON ENDO–SURGERY, INC., Plaintiff/counterclaim Defendant–Appellant,**

**and**

**Ethicon, Inc., Counterclaim Defendant–Appellant,**

**v.**

**UNITED STATES SURGICAL CORPORATION, Defendant/Counterclaimant–Appellee.**

No. 97–1574.

United States Court of Appeals, Federal Circuit.

June 30, 1998.

Gerald Sobel, Kaye, Scholer, Fierman, Hays & Handler, LLP, New York City, argued for plaintiff/counterclaim defendants–appellants. With him on the brief Aaron Stiefel, and Daniel P. DiNapoli. Of counsel were Robert A. Pitcairn, Jr., Katz, Teller, Brant & Hild, of Cincinnati, Ohio; and Eric I. Harris, Johnson & Johnson, New Brunswick, New Jersey.

Eric J. Lobenfeld, Chadbourne & Parke, LLP, New York City, argued for defendant/counterclaimant–appellee. With him on the brief was Drew M. Wintringham. Of counsel were Thomas R. Bremer, and John C. Andres, United States Surgical Corporation, Norwalk, Connecticut.

Before LOURIE, CLEVENGER, and SCHALL, Circuit Judges.

LOURIE, Circuit Judge.

Ethicon Endo–Surgery, Inc. and Ethicon, Inc. (collectively, "Ethicon") appeal from the decision of the United States District Court for the Southern District of Ohio granting summary judgment that United States Surgical Corporation ("USSC") does not infringe claims 6 or 24 of U.S. Reissue Patent 34,519 under the doctrine of equivalents. See *Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.*, No. 94–CV–74, (S.D. Ohio June 30, 1997). Because the district court properly determined that claim 6 was not infringed, but erred in rejecting Ethicon's theory supporting infringement of claim 24, we affirm-in-part, reverse-in-part, and remand.

## BACKGROUND

Ethicon owns the '519 patent, a reissue of U.S. Patent 4,892,244, directed to a "lockout mechanism" for use in linear cutter staplers ("staplers"). Such staplers allow a surgeon to make an incision in tissue while simultaneously stapling closed each side of the incision in order to prevent excessive bleeding. One object of the claimed lockout mechanism is "prevent[ing] the firing apparatus in a stapler from being used within a staple cartridge after the cartridge has been spent," '519 patent, col. 1, 11 53–56, thus making it impossible to use the stapler unless an unused cartridge has been inserted into it, see id. at col. 1, 11 30–31. An aspect of the invention, relevant to this appeal, is described in the following passage from the patent's Detailed Description of the Drawings, with reference to Figures 2, 3, and 4, shown below.

> When the [pusher bar] *32* travels through the staple cartridge *50*, and is activating drivers *52*, it will come into contact with a lockout mechanism *90*. This lockout mechanism *90* is comprised of a strip *92* which has a front end *94*. This front end *94* is spring loaded and sits within a hollow *59* of the staple cartridge *50*. When the [pusher bar] *32* advances far enough into the staple cartridge *50*, the front end *94* of the strip *92* is activated so that it moves entirely within the hollow *59*. ... When the strip *90* continues to move forward in the staple cartridge *50*, a detent or restraining means *98* is moved away from the barrier lock *96*, as seen in Fig. 3. When the [pusher bars] *32* are retracted from the staple cartridge *50*, the barrier lock *96* is able to move into the path of the [pusher bar] *32*, as seen in Fig. 4. At this point, therefore, the [pusher bar] *32* is no longer able to move through the longitudinal slots *33* of the staple cartridge, because it is blocked by the barrier lock *96*. Thus, the lockout mechanism *90* prevents refiring of the spent staple cartridge *50*.

Id. at col. 3, 11 2–25.

FIG-2

FIG-3

FIG-4

---

Claim 6, which is identical to a claim of the original '244 patent, reads as follows:

> *In a staple cartridge* insertable within a surgical stapler and containing staples and comprising an elongated body including one or more longitudinal slots for slidably receiving one or more longitudinal pusher bars comprising a firing mechanism of said surgical stapler and a plurality of drivers engageable by said pusher bars for ejecting the staples from the cartridge, said staple cartridge releasably fastened to a[sic] said surgical stapler,
>
> *the improvement comprising a lockout mechanism connected to said longitudinal slots* for preventing said pusher bar from passing more than one time through said longitudinal slots.

(emphasis and paragraphing added). Claim 24, added during reissue, reads as follows:

> A surgical stapler comprising
> a frame,

a cartridge filled with staples and positionable in operative association with said frame and having one or more slots,

a firing assemblage including a pusher assembly movable relative to said frame, said pusher assembly comprising one or more pusher bars respectively extending through said slots to fire said staples,

a member operatively connected to said pusher assembly for moving the pusher assembly in a firing direction down a path to fire the staples, and in a direction opposite to said firing direction to a retracted position after at least a portion of the staples have been fired,

a lockout mechanism for preventing firing movement of the pusher assembly in the firing direction after the pusher assembly has been moved to the retracted position, said lockout mechanism including a barrier assemblage for preventing

movement of the pusher assembly from said retracted position, said barrier assemblage comprising a resilient projecting member normally biased toward a position to engage said pusher assembly to prevent movement of said pusher assembly relative to said resilient projecting member after said pusher assembly has been moved to said retracted position, and

a *restraining structure* separate from said pusher bar *for blocking said barrier assemblage to maintain said resilient projecting member out of the path of the pusher assembly during staple firing, said restraining structure being movable by said pusher assembly during movement of the pusher assembly in the firing position* whereby the barrier assemblage is released to allow the resilient projecting member to move into the path of the pusher assembly to prevent firing movement of said pusher assembly after movement thereof to said retracted position.

(emphasis and paragraphing added). Thus, as this court has previously observed, "the primary distinction between claims 6 and 24 is that claim 6 seems to tie the location of the lockout mechanism to the slots through which the pusher bars pass, while claim 24 broadly describes the location of the lockout as anywhere in the path of the pusher assembly." *Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.,* 93 F.3d 1572, 1576–77, 40 USPQ2d 1019, 1022 (Fed.Cir.1996) (*Ethicon II*).

USSC produces the Multifire GIA 60 and GIA 80 open linear cutter staplers ("the USSC staplers") which employ a lockout mechanism that functions in accordance with USSC's U.S. Patent 5,031,814. This lockout mechanism consists of a barrier (or "hooking clip") for engaging a cam bar retainer, which although not a pusher bar, is part of the "pusher assembly." Also, rather than being in the staple cartridge, the barrier is located at the end of a self-contained "disposable loading unit" (DLU) opposite the staple cartridge. Thus, the USSC lockout does not physically obstruct the pusher bars' path into the cartridge, but rather prevents the bars from being pushed from behind by obstructing the movement of the cam bar retainer. As shown below in one of Ethicon's trial exhibits, the barrier of the USSC staplers' lockout moves into the path of the pusher assembly (the cam bar retainer plus the pusher bars) during the staple firing stroke. However, as Ethicon concedes and as shown in the first drawing, the barrier is held out of the path of the pusher assembly by the restraint (or "chock") only until just before the first staple is fired. As shown in the second drawing, by the time the first staple is fired, the barrier is in contact with the cam bar retainer. (The third drawing shows the position at which subsequent staples are fired.) As shown in the fourth drawing, after the cam bar retainer is retracted, the barrier rides up and over and hooks onto the cam bar retainer from behind and, as shown in the fifth drawing, prevents subsequent staple firing.

In 1994, Ethicon sued USSC, asserting that the USSC staplers (as well as other staplers that are not at issue in this appeal) infringed claims 6 and 24 of the '519 patent. The district court conducted a Markman hearing, after which it construed claim 6 as requiring that the lockout be located in the staple cartridge, and both claims 6 and 24 as requiring that the lockout mechanism engage the pusher bars and thus prevent them from passing through the longitudinal slots. *See Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.,* 900 F.Supp. 172, 179–83, 38 USPQ2d 1385, 1391–94 (S.D.Ohio 1995) (*Ethicon I*). Because USSC's lockout is not in the cartridge and it comes into direct contact with the cam bar retainer rather than the pusher bars, the court entered summary judgment of non-infringement.

On appeal, this court affirmed the finding of lack of literal infringement of claim 6, agreeing with the district court's construction of that claim. *Ethicon II,* 93 F.3d at 1577–78, 40 USPQ2d at 1023–24. However, we disagreed with the court's interpretation of claim 24, and held that the term "pusher assembly" encompasses both the pusher bars and the cam bar retainer. *Id.* at 1581, 93 F.3d 1572, 40 USPQ2d at 1026. Nevertheless, because Ethicon admitted that USSC's restraint "releases the barrier prior to the firing of any staples," we affirmed the finding of lack of literal infringement of claim 24, based on our construction of the "during staple firing" limitation as requiring "that the barrier remain outside the path of the pusher assembly until at least some of the staples have been fired," *id.* at 1582–83, 93 F.3d 1572, 40 USPQ2d at 1026–27. Finally, because the district court did not address infringement under the doctrine of equivalents, we vacated the dismissal of Ethicon's claims for infringement by equivalents and remanded to afford the district court the opportunity "to articulate whether any triable issues of fact with respect to infringement by equivalents exist." *Id.* at 1583, 40 USPQ2d at 1028.

On remand, USSC moved for summary judgment of non-infringement by equivalents. The district court granted USSC's

motion, finding that two declarations submitted by Ethicon did not raise genuine issues of material fact regarding equivalents. The court rejected Ethicon's theory supporting infringement of claim 6 by equivalents because that theory would require the court "to ignore the limitation that the lockout be connected to said longitudinal slots." *Ethicon Endo–Surgery v. United States Surgical Corp.*, 47 U.S.P.Q.2d 1272, (S.D. Ohio 1998) (*Ethicon III*). It then rejected Ethicon's theory supporting infringement of claim 24 by equivalents, which required that USSC's cam bar retainer and restraint be viewed as equivalent to the claimed restraining structure, because such a theory "would 'vitiate' the limitation of claim 24 that the restraining structure be movable by the pusher assembly," as it would illogically require the cam bar retainer to "be movable by itself." *See id.* at 16.

### DISCUSSION

We review a district court's grant of summary judgment *de novo*. *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1576–77, 12 USPQ2d 1382, 1383 (Fed.Cir.1989). Thus, summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether summary judgment was appropriate, we view the evidence in a light most favorable to the party opposing the motion with doubts resolved in favor of the opponent, which in this case is Ethicon. *See Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1274, 35 USPQ2d 1035, 1038 (Fed.Cir.1995).

██ A determination of infringement requires a two step analysis. "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1576, 27 USPQ2d 1836, 1839 (Fed.Cir. 1993). The first step, claim construction, is a question of law which we review *de novo*. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454–56, 46 USPQ2d 1169, 1172–75 (Fed.Cir.1998) (in banc); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979–81, 34 USPQ2d 1321, 1329–31 (Fed.Cir. 1995) (in banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 USPQ2d 1461 (1996). In the previous appeal, this court established the construction of all the claim terms in dispute. *See Ethicon II*, 93 F.3d at 1577–83, 40 USPQ2d at 1022–27. Thus, claim construction need not be repeated here, as our prior construction is law of the case. *See Stearns v. Beckman Instruments, Inc.*. 737 F.2d 1565, 1568, 222 USPQ 457, 459 (Fed.Cir.1984).

██ The second step of the infringement analysis, determining whether a particular device infringes a properly construed claim, is a question of fact. *See Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565, 1569, 219 USPQ 1137, 1140 (Fed.Cir.1983). As such, it is amenable to summary judgment where, *inter alia*, no reasonable fact finder could find infringement. *See Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 117 S.Ct. 1040, 1053 n. 8, 137 L.Ed.2d 146, 41 USPQ2d 1865, 1875 n. 8 (1997). Regarding this step, we previously affirmed the district court's decision granting summary judgment of lack of literal infringement, *see Ethicon II*, 93 F.3d at 1577–83, 40 USPQ2d at 1022–27, leaving the doctrine of equivalents as the only basis for a finding of infringement. Under the doctrine of equivalents, "a product or process that does not literally infringe upon [sic] the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner–Jenkinson*, 520 U.S. 17, 117 S.Ct. at 1045, 137 L.Ed.2d 146, 41 USPQ2d at 1868. Infringement may be found under the doctrine of equivalents if every limitation of the asserted claim, or its "equivalent," is found in the accused subject matter, where an "equivalent" differs from the claimed limitation only insubstantially. Whether a component in the accused subject matter performs substantially the same function as the claimed limitation in substantially the same way to achieve substantially the same result may be relevant to this determi-

nation. *See id.* at 1054, 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146, 41 USPQ2d at 1875. *But see, e.g., Genentech, Inc. v. Wellcome Found. Ltd.,* 29 F.3d 1555, 1570, 31 USPQ2d 1161, 1172–73 (Fed.Cir.1994) (Lourie, J., concurring).

■ "The doctrine of equivalents, when applied broadly, conflicts with the definitional and public-notice functions of the statutory claiming requirement." *Warner–Jenkinson,* 520 U.S. 17, 117 S.Ct. at 1048, 137 L.Ed.2d 146, 41 USPQ2d at 1871. Nonetheless, infringement under the doctrine of equivalents remains a viable basis for a finding of infringement, *see id* at 1054, 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146, 41 USPQ2d 1865, 1876 ("Today, we adhere to the doctrine of equivalents."), as long as a court properly applies (1) the so-called "All Elements" rule, *see id.* ("The determination of equivalence should be applied as an objective inquiry on an element-by-element basis."); *see also Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 935, 4 USPQ2d 1737, 1739–40 (Fed.Cir.1987) (in banc), and (2) the doctrine of prosecution history estoppel, *see Warner–Jenkinson,* 520 U.S. 17, 117 S.Ct. at 1049, 137 L.Ed.2d 146, 41 USPQ2d at 1876 ("Prosecution history estoppel continues to be available as a defense to infringement.").

## A. Claim 6

■ The district court determined that as a matter of law the USSC staplers do not infringe claim 6 by equivalents because the USSC lockout mechanism differs substantially from the "connected to said longitudinal slots" limitation. In reaching this conclusion, the court noted that the accused lockout "is located at the distal end of the [DLU] nowhere near the longitudinal slots which are located in the staple cartridge at the front end of the stapler and therefore cannot block the slots," and that "[c]laim 6 does not describe the structure of the lockout mechanism but merely describes its location and function." *Ethicon III,* slip op. at 12–13. Accordingly, the court rejected Ethicon's theory of infringement by equivalents and refused to give any evidentiary weight to the declaration of Ethicon's expert, Dr. John Col-

lins, or an inventor of the '519 patent, William D. Fox. The court stated:

> "Ethicon's argument requires us to ignore the limitation that the lockout mechanism be connected to said longitudinal slots which is improper under the doctrine of equivalents. Eliminating any mention that the lockout mechanism operates relative to the longitudinal slots would essentially leave claim 6 merely as a lockout mechanism in a staple cartridge. Given the few limitations in claim 6, the court is especially wary of any attempt to disregard those limitations."

*Id.* at 13 (citations omitted).

To support its conclusion, the court relied on this court's opinions in *Dolly, Inc. v. Spalding & Evenflo Cos.,* 16 F.3d 394, 29 USPQ2d 1767 (Fed.Cir.1994), and *Wiener v. NEC Electronics, Inc.,* 102 F.3d 534, 41 USPQ2d 1023 (Fed.Cir.1996). More specifically, the court relied on our statements that "[t]he doctrine of equivalents is not a license to ignore the claim limitations," *Dolly,* 16 F.3d at 398, 29 USPQ2d at 1769, and "[t]he protection of a patent may not 'embrace a structure that is specifically excluded from the scope of the claims.'" *Wiener,* 102 F.3d at 541, 41 USPQ2d at 1028 (quoting *Dolly,* 16 F.3d at 400, 29 USPQ2d at 1771). The court found the claim limitations to be in effect specific exclusions of all other subject matter. In its argument before this court, USSC found additional support for the district court's decision in our more recent opinion in *Sage Products, Inc. v. Devon Industries, Inc.,* 126 F.3d 1420, 44 USPQ2d 1103 (Fed.Cir.1997), which stated that "the doctrine of equivalents does not grant [a patentee] license to remove entirely [any of the] limitations from the claim." *Sage,* 126 F.3d at 1424, 44 USPQ2d at 1106 (citing *Warner–Jenkinson, Pennwalt,* and *Dolly*).

Ethicon argues that the district court's reliance on *Dolly* and *Wiener,* as well as USSC's reliance on *Sage,* is misplaced because those cases are factually distinguishable, and in any event no language in claim 6 "directly addresses and specifically excludes" a lockout positioned as in USSC's staplers. Ethicon also argues that the statements relied upon by the district court and USSC, if read broadly, would thoroughly undermine the doctrine of equivalents and specifically

contradict *Corning Glass Works v. Sumitomo Electric U.S.A., Inc.*, 868 F.2d 1251, 1259, 9 USPQ2d 1962, 1968 (Fed.Cir.1989) ("An equivalent must be found for every limitation of the claim somewhere in an accused device, but not necessarily in a corresponding component, although that is generally the case."). Ethicon asserts that it has raised a genuine issue of fact regarding equivalence, based on (1) Collins' testimony that the lockout plays substantially the same role (*i.e.*, preventing the pusher bars from passing more than one time through the longitudinal slots) whether it is located "in the staple cartridge" and "connected to the longitudinal slots," as in claim 6, or in the rear of the DLU, as in USSC's staplers, and (2) both Fox's and Collins' testimony that a person of ordinary skill in the art would have recognized that the lockout at the rear of the DLU was "interchangeable" with the lockout as literally stated in claim 6. In light of this evidence, Ethicon argues that we should remand this case to the district court for a jury determination of equivalence.

USSC responds that *Dolly, Wiener,* and *Sage* require summary judgment of non-infringement of claim 6. USSC asserts that Ethicon's theory vitiates the "in a staple cartridge" and "connected to said longitudinal slots" limitations by construing too broadly the function that these limitations perform. USSC further argues that because its lockout's structure is "specifically excluded" from claim 24 as a result of the two claim limitations being "totally absent," claim 24 is plainly not met by equivalents.

■ The discussion of our case law by both parties, as well as the district court, requires that we place the cited decisions in perspective, as well as in the context of *Warner–Jenkinson.* We agree with Ethicon that, if read as argued by USSC, the above-quoted statements from *Dolly, Wiener,* and *Sage* would force the All Elements rule * to swallow the doctrine of equivalents, reducing the application of the doctrine to nothing

more than a repeated analysis of literal infringement. Once a negative determination of literal infringement is made, that failure to meet a limitation would preclude a finding of infringement under the doctrine. The doctrine of equivalents would thus be rendered superfluous under USSC's view, because a finding of non-infringement would be foreordained when a court has already found that the accused subject matter does not literally fall within the scope of the asserted claim. However, any analysis of infringement under the doctrine of equivalents *necessarily* deals with subject matter that is "beyond," "ignored" by, and not included in the literal scope of a claim. Such subject matter is not necessarily "specifically excluded" from coverage under the doctrine unless its inclusion is somehow inconsistent with the language of the claim. Literal failure to meet a claim limitation does not necessarily amount to "specific exclusion." *Cf. Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581, 1582–83, 37 USPQ2d 1365, 1372, 1373–74 (Fed.Cir.1996) (holding that a device "with only two offset distances" was "specifically excluded from the scope of the claim[ ]" because the claim had been construed to include "the limitation that the ... offset distance take on at least three values").

In *Dolly,* decided prior to our decision in *Hilton Davis Chemical Co. v. Warner–Jenkinson Co.,* 62 F.3d 1512, 35 USPQ2d 1641 (Fed.Cir.1995), *rev'd and remanded,* 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146, 41 USPQ2d 1865 (1997), this court noted that it had previously construed the claim limitation "a stable rigid frame ... which along with said seat panel and said back" as requiring "that the stable rigid frame must be formed independently of the seat and back panels." *Dolly,* 16 F.3d at 397, 29 USPQ2d at 1768. Based on that claim construction, we had previously vacated a preliminary injunction prohibiting the sale of chairs having a stable rigid frame formed of, *inter alia,* seat and back panels. *See id.* On appeal from the

---

* We have said that "[i]n the All Elements rule, 'element' is used in the sense of a *limitation* of a claim," *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.,* 868 F.2d 1251, 1259, 9 USPQ2d 1962, (Fed.Cir.1989) (emphasis in original), and "[i]t is the *limitation* of a claim that counts in determining both validity and infringement, and

a limitation may include descriptive terms," *Perkin–Elmer Corp. v. Westinghouse Elec. Corp.,* 822 F.2d 1528, 1533 n. 9, 3 USPQ2d 1321, 1325 n. 9 (Fed.Cir.1987) (emphasis in original). Thus, the All Elements rule might better be called the All Limitations rule. It will be referred to as such throughout the remainder of this opinion.

district court's decision on remand, a grant of summary judgment of infringement by equivalents, the *Dolly* court reversed. The court reasoned that "[a] stable rigid frame assembled from the seat and back panels is not the equivalent of a separate stable rigid frame ... exclusive of seat and back panels." *Id.* at 400. There was no question that the accused device's seat and back panels were fully attached to the frame; the frame clearly and unambiguously included seat and back panels. Thus, given the marked differences between the allegedly infringing device and the claim limitation, no reasonable fact finder could have found equivalence.

Similarly, in *Wiener*, decided prior to the Supreme Court's decision in *Warner–Jenkinson*, this court determined that there was no infringement by equivalents as a matter of law. We first construed the claim term "columns" to mean those columns located within the "data matrix," also known as a "memory array." *Wiener*, 102 F.3d at 540, 41 USPQ2d at 1029. The patentee argued that the allegedly infringing "VRAM" had columns equivalent to those of the asserted claims, even though the VRAM's columns were located in a data register, not in a memory array. *See id.* at 541, 102 F.3d 534, 41 USPQ2d at 1029. Because the VRAM "disconnects the gates and latches to electronically isolate the data register from the memory array" at the relevant time, *id.* at 537, 102 F.3d 534, 41 USPQ2d at 1025, we concluded that the difference between the claim limitation and the VRAM was "not insubstantial." *Id.* at 541, 102 F.3d 534, 41 USPQ2d at 1029. Given the clear demarcation and physical separation between the memory array and the data register in the VRAM, no reasonable fact finder could have found infringement by equivalents.

In *Sage*, decided after the Supreme Court's decision in *Warner–Jenkinson*, this court affirmed a grant of summary judgment of non-infringement by equivalents. Specifically, regarding the "top of the container" limitation, we stated that "[t]he district court properly rejected all four of Sage's theories of infringement by equivalents.... Sage's first three theories place the location of the 'elongated slot' in this accused device far enough within the container body that, as a matter of law, no reasonable juror could find

that it is located at substantially the 'top of the container.'" *Sage*, 126 F.3d at 1424, 44 USPQ2d at 1106. We also noted that "[n]o subtlety of language or complexity of the technology, nor any subsequent change in the state of the art, such as later-developed technology, obfuscated the significance of the limitation at the time of its incorporation into the claim." *Id.* at 1425, 126 F.3d 1420, 44 USPQ2d at 1107.

*Dolly, Wiener,* and *Sage* were decided on their facts, and were consistent with both our precedent and with the Supreme Court's recent express adherence to the doctrine of equivalents as a viable alternative to literal infringement. They simply explained that on the facts presented, no reasonable finder of fact could have found infringement by equivalents because the differences between the allegedly infringing devices and the claimed inventions were plainly not insubstantial. *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609, 70 S.Ct. 854, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950) ("What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case."). But they did not read the doctrine of equivalents out of existence when a claim limitation is not expressly met by an accused device. With this framework in mind, we will return to the facts of this case.

We agree with USSC that the district court properly granted summary judgment with respect to claim 6. The district court observed that the "connected to said longitudinal slots" limitation "ties the lockout to a specific place." *Ethicon III*, slip op. at 12. The court then rejected Ethicon's theory of infringement by equivalents because USSC's lockout "is located at the distal end of the [DLU] nowhere near the longitudinal slots which are located in the staple cartridge at the front end of the stapler." We agree with this reasoning; it is consistent with our case law.

Although Ethicon is certainly correct that it would be insufficient to base a conclusion of non-infringement by equivalents solely on the fact that the allegedly infringing lockout is *not* connected to the longitudinal slots, the district court determined that USSC's lock-

out is not even close to the longitudinal slots. Instead, it is located at the far end of the DLU, near the rear of the stapler. Because the rear of the stapler is opposite the longitudinal slots, no reasonable jury could have found that the USSC lockout was substantially "connected to said longitudinal slots."

Similarly, no reasonable jury could have found that the "in a staple cartridge" limitation was met by an equivalent. Like the "connected to said longitudinal slots" limitation, the "in a staple cartridge" limitation ties the lockout to a specific place. As we held in *Ethicon II*, 93 F.3d at 1578, 40 USPQ2d at 1023, this limitation is material even though it appears only in the preamble of the claim. In fact, it was deemed material when claim 6 was confirmed on reissue, as the examiner expressly stated that two prior art devices did not negate patentability because they "do not have a lockout mechanism in the cartridge." Thus, the district court's reasoning with respect to the "connect to said longitudinal slots" limitation is equally applicable to the "in the staple cartridge" limitation. The USSC lockout is located near the end of the stapler, opposite the cartridge. Not only is it not "in the staple cartridge," it is on the firing means, which is located nowhere near the cartridge. This analysis of claim 6 in relation to the accused device shows that, while the claim does not contain a specific exclusion, the accused device does involve substantial differences from the claim that preclude a finding of infringement under the doctrine of equivalents.

Contrary to Ethicon's argument, the district court's decision was not inconsistent with our decision in *Corning Glass*, affirming a trial court's finding of infringement by equivalents. In that case, the patent disclosed an optical fiber having a doped fused silica core and a fused silica cladding, such that the core's refractive index (RI) was greater than that of the cladding. *Id.* at 1255, 868 F.2d 1251, 9 USPQ2d at 1964. Because "the inventors did not know of specific dopants that would decrease the RI of fused silica," *id.*, the asserted claims recited "a core formed of fused silica to which a dopant material on at least an elemental basis has been added," *i.e.*, a positively doped core. *Id.* at 1256, 868 F.2d 1251, 9 USPQ2d at 1965. The infringing fiber, however, achieved a positive RI differential by having negative dopant in the cladding. *Id.* at 1259–60, 868 F.2d 1251, 9 USPQ2d at 1968–69. Thus, *Corning Glass* involved the simultaneous substitution of two reciprocal limitations (cladding for core and negative dopant for positive) and met the established tests for equivalence. As with all infringement questions, it was decided on its facts.

Accordingly, we conclude that summary judgment of non-infringement of claim 6 by equivalents was appropriate under the All Limitations rule; no reasonable jury could have found that the difference between the location of the USSC lockout and the location of the lockout as claimed was insubstantial.

### B. *Claim 24*

■ The district court also determined that as a matter of law the USSC staplers did not infringe claim 24 by equivalents. The court first noted that USSC's lockout did not literally meet the "during staple firing" limitation. *See Ethicon III*, slip op. at 15. The court then rejected Ethicon's theory of infringement by equivalents, that the combination of USSC staplers' restraint and cam bar retainer are the equivalent of the claimed restraining structure, based on the "said restraining structure being movable by said pusher assembly" claim limitation. The court reasoned that Ethicon's theory required the cam bar retainer to be simultaneously part of the pusher assembly and the restraining structure and that logically such a unitary structure could not "be movable by itself," as required by the claim. *Id.* at 16.

Ethicon again argues that the district court misapplied our case law and erred in failing to consider Dr. Collins' declaration. Specifically, regarding the "during staple firing" limitation, Ethicon argues that USSC's restraint is equivalent to the claimed restraining structure because USSC's restraint (1) may properly be viewed as working in conjunction with the cam bar retainer to hold the barrier out of the path of the pusher assembly and (2) holds the barrier out of the path of the pusher assembly by itself until immediately prior to staple firing. Ethicon asserts that these are insubstantial differences compared with a restraint that holds

out the barrier "during staple firing." As Collins explained by analogy to the length of the pusher bars, if the several-inch long pusher bars of the Multifire GIA 80 stapler were just 13.5 millimeters longer, or those of the Multifire GIA 60 were just 16.5 millimeters longer, the USSC staplers would literally meet the "during staple firing" limitation and thus literally infringe. Ethicon analogizes this case to *Wright Medical Technology, Inc. v. Osteonics Corp.,* 122 F.3d 1440, 43 USPQ2d 1837 (Fed.Cir.1997), and asserts that we should remand for a jury determination of equivalence.

USSC responds that the district court correctly applied the All Limitations rule, emphasizing that its restraint does not perform substantially the same function as the claimed retraining structure in substantially the same way, *viz.,* blocking the barrier during staple firing by physically contacting the barrier during the initial forward movement of the pusher assembly. USSC also argues that its lockout is substantially different from the claimed lockout because "[i]t locks out even if *no* staples have been fired, because the lockout clip is released [by the restraint] *before*.any staples have been fired." (emphasis in original) USSC also asserts that *Dolly* and *Sage* require that we reject Ethicon's theories of infringement by equivalents.

 We agree with Ethicon that summary judgment of non-infringement by equivalents was improper with respect to claim 24. The district court erroneously reasoned that the "said restraining structure being movable by said pusher assembly" limitation requires as a matter of law that the cam bar retainer be distinct from the restraint. We have stated that "[o]ne-to-one correspondence of components is not required, and elements or steps may be combined without ipso facto loss of equivalency." *Sun Studs, Inc. v. ATA Equip. Leasing Inc.,* 872 F.2d 978, 989, 10 USPQ2d 1338, 1347 (Fed.Cir.1989), *overruled on other grounds, A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1038–39, 22 USPQ2d 1321, 1333 (Fed.Cir.1992). In other words, two physical components of an accused device may be viewed in combination to serve as an equivalent of one element of a claimed invention, as long as no claim limitation is thereby wholly vitiated. Thus, with respect to claim 24, the cam bar retainer (a part of the pusher assembly) and the restraint may be considered to act in combination, although not physically combined, to form an equivalent of the claimed restraining structure if the combination does not wholly vitiate the "movable by" limitation. Because that limitation requires only that the restraining structure move together with the pusher assembly during the staple firing stroke, and because the cam bar retainer and the restraint of the USSC staplers clearly move together during the staple firing stroke, Ethicon's assertion that the cam bar retainer and restraint act in combination does not wholly vitiate the "movable by" limitation. *See, e.g., Graver Tank,* 339 U.S. at 609, 70 S.Ct. 854, 94 L.Ed. 1097, 85 USPQ at 331 ("Consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform."). Accordingly, the district court's reasoning, standing alone, does not compel rejection of Ethicon's theory of infringement by equivalents.

Further analysis indicates that summary judgment with respect to claim 24 must be reversed. The facts in this case are not analogous to those in *Dolly, Wiener,* or *Sage.* Rather, as Ethicon asserts, they are more closely analogous to those in *Wright Medical.* In that case, we reversed a summary judgment of non-infringement by equivalents and remanded for a factual determination whether the allegedly infringing device's intramedullary rod was equivalent to the claimed rod, a rod "adapted to closely fit in and extend through the narrowest portion [the isthmus] of the human femur." *Wright Med.,* 122 F.3d at 1442, 1446, 43 USPQ2d at 1839, 1842. We remanded because we could not determine as a matter of law that the allegedly infringing device's rod was not equivalent to the claimed rod even though it extended to, but not "through," the isthmus. While the structural difference between the accused and claimed rod supported summary judgment of lack of literal infringement, *see id.* at 1444, 122 F.3d 1440, 43 USPQ2d at 1841, that difference was not clear enough on summary judgment to conclude that no reasonable fact-finder could find that the rods

were equivalent. This was especially true, given the patentee's evidence suggesting that the rods performed substantially the same function in substantially the same way to achieve substantially the same result. *See id.* at 1445–46, 122 F.3d 1440, 43 USPQ2d at 1841–42.

Similarly, in this case, only a few millimeters in the length of the pusher bars distinguishes the claimed restraining structure, which contacts the barrier "during staple firing," from the USSC stapler's restraint, which loses contact with the barrier just prior to staple firing. As counsel for USSC acknowledged during oral argument, this physical difference translates into a "very slight," "very quick" temporal difference, a period that is perhaps as short as a few thousandths of a second. Thus, we cannot say as a matter of law that this difference is substantial. It is a subtle difference in degree, not a clear, substantial difference or difference in kind, as was the case regarding claim 6. In light of this small difference in length and time, the Collins declaration raises genuine issues of material fact as to equivalence, issues that must be resolved by the finder of fact.

Accordingly, we reverse the summary judgment of non-infringement by equivalents of claim 24 and remand for the finder of fact to determine whether the USSC staplers' restraint and the claimed restraining structure are equivalent. Generally, the fact-finder should consider, *inter alia*, whether the restraint and the restraining structure substantially differ physically or temporally in their interaction with their respective barriers and whether the USSC staplers' restraint performs substantially the same function in substantially the same way to achieve substantially the same result as the claimed restraining structure. *See Warner–Jenkinson*, 520 U.S. 17, 117 S.Ct. at 1054, 137 L.Ed.2d 146, 41 USPQ2d at 1875 ("There seems to be substantial agreement that, while the triple identity test may be suitable for analyzing mechanical devices, it often provides a poor framework for analyzing other products or processes."). More particularly, the fact-finder should consider whether, as USSC asserts, the USSC restraint in practice provides the lockout function in the absence of staple firing.

## CONCLUSION

Because the differences between the location of the accused USSC staplers' lockout and that of the claimed lockout are clearly substantial, we affirm the decision granting summary judgment of non-infringement of claim 6 by equivalents. However, because a genuine issue of material fact exists regarding the substantiality of the differences between the restraint, the barrier, and staple firing in the USSC staplers and the corresponding components in the claim, we reverse the decision granting summary judgment of non-infringement of claim 24 by equivalents and remand for a factual determination of this issue.

*AFFIRMED–IN–PART, REVERSED–IN–PART, and REMANDED.*

## COSTS

Each party will bear its own costs.