### The TORONTO–DOMINION BANK

v.

### Boris KARPACHEV.

### No. Civ.A.01–10279–RGS.

United States District Court,
D. Massachusetts.

March 6, 2002.

Ronald M. Daignault, Pennie & Edmonds, New York City, Stphen S. Young, Holland & Knight LLP, Boston, MA, Brian L. Berlandi, Pennie & Edmonds, New York City, for Plaintiff.

Boris Karpachev, Newton, MA, for Defendant.

### MEMORANDUM AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

STEARNS, District Judge.

Plaintiff Toronto–Dominion Bank maintains that defendant Boris Karpachev has deliberately registered domain names confusingly similar to its proprietary TD Waterhouse mark as part of an extortionate campaign of defamatory abuse. Karpachev contends that his actions are protected by the First Amendment. Because Karpachev's use of the domain names violates the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. §§ 1125(a) and 1125(d), the court will enter judgment for Toronto–Dominion Bank.

### BACKGROUND

Toronto–Dominion Bank is a Canadian corporation and Canada's largest bank. Toronto–Dominion Bank acquired Waterhouse Securities and Waterhouse Investor Services in 1996. At that time Toronto–Dominion Bank became Canada's largest discount broker. Waterhouse Securities continued to operate under its own name in the United States until June of 1999 when Toronto–Dominion Bank reorganized and created a majority owned subsidiary under the name TD Waterhouse Group, Inc. Toronto–Dominion Bank uses the TD Waterhouse name and the mark "tdwaterhouse.com" in connection with its on-line brokerage services.[1] Currently, TD Waterhouse has over four million customer accounts worldwide, and more than 170 branch offices in the United States.

In June of 1999, Karpachev became a customer of TD Waterhouse. In November of 1999, a dispute arose between Karpachev and TD Waterhouse. Karpachev claims that TD Waterhouse, while "executing [Karpachev's] change order made an ... unauthorized 'short sale' ... and buy to cover," resulting in a $34,894.57 loss to Karpachev and the closing of Karpachev's trading account. In reprisal, Karpachev registered sixteen domain names composed of variant misspellings of the name tdwaterhouse.com.[2] On the In-

---

1. Toronto–Dominion Bank is the registered owner of the TD Waterhouse mark. *See* U.S. Service Mark Application No. 75/759,863.

2. They are: (1) tdwatergouse.com; (2) dwaterhouse.com; (3) dtwaterhouse.com; (4) tdwaterhause.com; (5) tdwoterhouse.com; (6) twaterhouse.com; (7) tdwoterhause.com; (8) woterhouse.com; (9) waterhause.com;

ternet sites associated with these domain names, Karpachev excoriates TD Waterhouse for "webfascism" and Toronto–Dominion Bank for its involvement in "white collar crime." Karpachev compares the plaintiffs' business methods to what "Nazi or Soviet Totalitarists did to their victims."[3] Karpachev also posts this court's mailing address, encouraging readers to write to the court about "what you feel and think about Toronto–Dominion Bank...."

Karpachev also filed a complaint against TD Waterhouse with the Securities and Exchange Commission. Toronto–Dominion Bank in turn brought an action before the World Intellectual Property Organization (WIPO) protesting Karpachev's use of the domain names "tdwatergouse.com" and "dwaterhouse.com." A WIPO arbitration panel ruled that Karpachev was using the names in bad faith and ordered Karpachev to transfer them to Toronto–Dominion Bank. Karpachev refused and brought a civil action against Toronto–Dominion Bank and the WIPO in the Massachusetts Superior Court. The defendants removed that action to this court on February 20, 2001. In the interim, on February 14, 2001, Toronto–Dominion Bank filed an action in federal court accusing Karpachev of trademark infringement and unfair competition.[4] The cases were then consolidated. On September 26, 2001, after twice ordering Karpachev to file a more definite statement of his claims, the court allowed Toronto–Dominion Bank's motion to dismiss Karpachev's Complaint. Both parties now move for summary judgment on certain of Toronto–Dominion Bank's claims.

## DISCUSSION

Toronto–Dominion Bank moves for summary judgment on its claims for trademark infringement and unfair competition under the ACPA. A party is entitled to summary judgment when there is no genuine issue of material fact and the party can show that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Perez v. Volvo Car Corp.*, 247 F.3d 303, 310 (1st Cir.2001). A "genuine" issue of fact is one that a reasonable jury, on the record before the court, could resolve in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When

---

(10) woterhause.com; (11) d-waterhouse.com; (12) t-waterhouse.com; (13) t-d-waterhouse.com; (14) td-water-house.com; (15) dwaterhouseinst.com; and (16) td waterhouse-inst.com.

**3.** Karpachev, for example, details on his websites the murders by Atlanta gunman Mark Barton of his wife and children and nine employees of a securities brokerage and investment firm whom he blamed for financial losses, concluding with the exhortation that
[t]he violence must be made to be very expensive, in order to drive TD Waterhouse Webbroker to bankruptcy, unless it has given the violence up. This information is set out for TD Waterhouse Webbroker's customers and other investors would know the losses, humiliation and temptation they may have while being TD Waterhouse Webbroker's customers.

You love your dearest and nearest—do not risk them!!!
Do not deal with TD Waterhouse Webbroker!!!
It uses dangerous, Webfacism methods.

**4.** Toronto–Dominion Bank's federal Complaint is framed in six counts: Count I—Trademark Infringement and Unfair Competition in violation of the Trademark Act, 15 U.S.C. § 1125(a); Count II—Dilution of Mark under 15 U.S.C. § 1125(c); Count III—Trademark Infringement under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); Count IV—Common law Trademark Infringement and Unfair Competition; Count V—Unfair and Deceptive Trade Practices; Count VI—Injury to Business Reputation and Dilution under Mass.Gen.Law 110B, § 12.

deciding a summary judgment motion, a court must view the evidence presented in the light most favorable to the non-moving party and resolve all doubts in its favor. *See Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1315 (Fed.Cir.1998).

· *Trademark Infringement and Cybersquatting*[5]

To establish liability for trademark infringement and unfair competition under the ACPA, Toronto–Dominion Bank must establish (1) that TD Waterhouse.com was a preexisting "distinctive or famous" mark; (2) that Karpachev's domain names are "identical or confusingly similar" to those of Toronto–Dominion Bank; and (3) that Karpachev registered the domain names in bad faith. *Star Financial Services, Inc. v. AASTAR Mortgage Corp.*, 89 F.3d 5, 9 (1st Cir.1996) (quoting *DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 605 (1st Cir. 1992)). Likelihood of confusion is a question of law for the court on a motion for summary judgment. *Int'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Ctr.*, 103 F.3d 196, 200 (1st Cir.1996).

There is no dispute about Toronto–Dominion Bank's right to the TD Waterhouse domain name. Similarly, Karpachev does not dispute that he has registered and uses domain names conspicuously similar to the TD Waterhouse mark. See Complaint ¶ 64; Defendant's "Briefs" ¶ 35. Confusion was Karpachev's purpose in registering the names to provide a forum for his campaign against TD Waterhouse and Toronto–Dominion Bank.

> The final inquiry under the ACPA is whether [Karpachev] acted with a bad faith intent to profit from [Waterhouse's] distinctive and famous mark or

whether his conduct falls under the safe harbor provision of the Act. Section 1125(d)(1)(B)(i) provides a non-exhaustive list of nine factors for us to consider when making this determination:

(I) the trademark or other intellectual property rights of the person, if any, in the domain name; (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct; (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct; (VIII) the person's registration or acquisition of multi-

---

**5.** Cybersquatting is a term of art referring to the bad faith, abusive registration and malicious use of a distinctive Internet domain name. *See Fighting Back on the Internet: A Primer on the Anticybersquatting Consumer Protection Act*, 14 Utah B.J. 18, 19 (2001).

ple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

*Shields v. Zuccarini,* 254 F.3d 476, 484–485 (3d Cir.2001).

Karpachev traverses several of these factors. It is Karpachev's admitted intent to "divert consumers from [TD Waterhouse's] mark . . . by creating a likelihood of confusion as to the source, sponsorship or affiliation, or endorsement of the site." 15 U.S.C. § 1125(d)(1)(B)(i)(v). Also Karpachev registered the "multiple domain names . . . know[ing that the names] are identical or confusingly similar" to the TD Waterhouse mark. 15 U.S.C. § 1125(d)(1)(B)(i)(VIII). Confusion was Karpachev's sole purpose in selecting the domain names. Karpachev's use of the names is not in connection with the offering of goods or services or any other "fair use." 15 U.S.C. § 1125(d)(1)(B)(i)(IV). He has no intellectual property rights to the names (he has not used them as trademarks or service marks). 15 U.S.C. § 1125(d)(1)(B)(i)(I).

I find that there is no dispute that Karpachev has acted with the intent to "tarnish or disparage" the TD Waterhouse mark. 15 U.S.C. § 1125(d)(1)(B)(i)(V); *Shields,* 254 F.3d at 485. Therefore, Toronto–Dominion Bank's motion for summary judgment on Count III of its Complaint is *ALLOWED.*[6] Pursuant to 15 U.S.C. 1125(d)(1)(C), Karpachev is *ORDERED* to forfeit his interests in, or use of, the sixteen domain names identified in footnote 2. Karpachev is further *ORDERED* to cease and desist from registering any additional domain names for the purpose of creating confusion with the TD Waterhouse mark.

The memorandum in support of Karpachev's motion for summary judgment addresses his previously disposed of claims against Toronto–Dominion Bank. For the reasons stated in the court's September 26, 2001 Order dismissing Karpachev's claims, his cross motion for summary judgment is *DENIED.*

### ORDER

As the prevailing party, Toronto Dominion Bank shall, within fourteen (14) days of the date of this opinion, submit a proposed form of judgment on Count III of its Complaint.

SO ORDERED.

**6.** To prevail in an action for trademark infringement under the Lanham Act, Toronto–Dominion Bank must show that Karpachev, "in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device" to confuse consumers as to the source or sponsorship of the product or services offered or the relationship between the parties. 15 U.S.C. § 1125(a)(1)(A). *See also Astra Pharmaceutical Prods., Inc. v. Beck-* *man Instruments, Inc.,* 718 F.2d 1201, 1205 (1st Cir.1983) (trademark infringement liability premised upon, among other things, an assessment of the "similarity of the goods" and the "relationship between the parties' channels of trade."). Having entered judgment for Toronto–Dominion Bank on Count III of its Complaint, the court deems the Count I Lanham Act claim to be *MOOT.*