**UNITED SYSTEMS OF ARKANSAS, INC., Plaintiff/Counterclaim Defendant–Appellee,**

and

**Glenn Petkovsek, Counterclaim Defendant–Appellee,**

v.

**LASER SUBSTRATES, INC., Defendant/Counterclaimant– Appellant.**

No. 01–1224.

United States Court of Appeals, Federal Circuit.

Feb. 19, 2002.

Before LOURIE, RADER, and GAJARSA, Circuit Judges.

## DECISION

LOURIE, Circuit Judge.

Laser Substrates, Inc. appeals from the decision of the United States District Court for the Eastern District of Arkansas granting United Systems of Arkansas, Inc. and Glenn Petkovsek's (collectively, "United's") motion for summary judgment of noninfringement. *United Sys. of Ark., Inc. v. Laser Substrates, Inc.*, No. 4:98CV00764, slip op. at 1 (E.D.Ark. Jan. 5, 2001) ("*Laser*"). Because the district court did not err in concluding that there were no genuine issues of material fact and that United is entitled to judgment as a matter of law, we *affirm*.

## DISCUSSION

Laser is the assignee of U.S. Patent 5,836,622, which is directed to a post card assembly with an image placed on a single side. *Laser* at 1. After printing, the form may be folded so that the image appears on both sides of the fold line. *Id.* The claimed assembly allows the user to efficiently print alternative return addresses and receipt addresses. *Id.* Claims 1 and 15 read as follows:

1. An assembly adapted to being folded to form a folded document with images on both sides thereof, *following a single pass of said assembly through an image forming device which places an image only on one side of said assembly*, said assembly comprising:

a front sheet including an image receiving surface, and an adhesive coated surface;

a back sheet having an outward facing surface, an interior surface, and a first tear line between said interior and outward facing surfaces, said interior surface being affixed to said adhesive coated surface of said front sheet *such that a permanent bond is formed on one side of said tear line and a releasable bond is formed on the other side of said tear line*, a release material being affixed on said interior surface of said back sheet on said other side of said tear line; and

a fold line on said front sheet aligned with said tear line when said front sheet and back sheet are affixed, *all images formed by said image forming device occurring on said image receiving surface and on both sides of said fold line;*

said folded document being formed by removing a portion of said back sheet on said other side of said tear line, thereby exposing said adhesive coated surface of said front sheet and leaving a remaining portion of said back sheet, and folding said front sheet about said fold line so that said exposed adhesive coated surface contacts said remaining portion of said back sheet.

'622 patent, col. 14, ll. 33–60 (emphases added).

15. An assembly adapted to being folded to form a folded document with images on both sides thereof, *following a single pass of said assembly through an image forming device which places an image only on one side of said assembly when unfolded,* said assembly comprising:

*a first sheet of paper having an image receiving surface and a fold line, all images formed by said image forming device occurring on said image receiving surface and on both sides of said fold line, said fold line permitting said first sheet of paper to be folded, whereby said images appear on both sides of said folded document, when folded;*

a pressure sensitive adhesive coated on a side of said first sheet opposite said image receiving surface, said opposite surface having a gap without adhesive extending along said fold line;

a second sheet of paper having an interior surface, a back surface and a tear line therebetween, said first and second sheets being the same size; and

a release material coated on one portion of said interior surface of said second sheet in a first direction away from said tear line, said interior surface and opposite surface being maintained together by said adhesive and said fold line and tear line being aligned with one another;

said folded document being formed by removing a remaining portion of said second sheet in a direction opposite to said first direction from said tear line, thereby exposing said adhesive on said opposite side of said first sheet and leaving said one portion of said second sheet, and folding said first sheet about said fold line so that said exposed adhesive contacts said back surface of said one portion of said second sheet.

*Id.* at col. 16, ll. 7–40 (emphases added). United manufactures the accused CMF–301b and CMF–088 forms. The parties agree on certain relevant aspects of these forms, *viz.,* that the CMF–301b form has the sender's return address printed on the back sheet, *Laser* at 10, and that the CMF–088 form has a uniform bonding material throughout, *id.* at 5.

On November 17, 1998, the same day that the '622 patent issued, United sued Laser, seeking a declaratory judgment of noninfringement. Laser counterclaimed, alleging, *inter alia,* infringement of claims 1 and 15 by CMF–301b and of claim 1 by CMF–088. The district court granted United's motion for summary judgment of noninfringement.

The district court agreed with United's argument that Laser distinguished claims 1 and 15 from the prior art by amending the claims "to require all images to be on the receiving portion of the patent [sic], in contrast to a form with printed images on both sides." *Id.* at 10. In any event, the court stated that "the plain language of the '622 patent requires all images to be on one side of the form." *Id.* at 10 n. 6. Because the CMF–301b form had images on both sides, the court determined that it did not literally infringe claims 1 or 15. *Id.* at 10. It also construed claim 1 as requiring both a permanent bond and releasable bond, stating that "[p]atent '622 clearly contemplates two types of tack."

*Id.* at 5. It then determined that the CMF–088 form did not literally infringe because it had only a releasable bond, rejecting Laser's argument that it was a jury question whether one of skill in the art would understand the bond of the CMF–088 to be "permanent." *Id.*

The court did not evaluate whether either the CMF–301b or the CMF–088 form infringed under the doctrine of equivalents, although it evaluated infringement under that doctrine by other accused products, apparently because Laser did not specifically assert doctrine of equivalents infringement by the CMF–301b or CMF–088 forms. *Id.* at 5, 10. Laser appealed from the court's grant of summary judgment; we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We review a district court's grant of a motion for summary judgment *de novo. Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.,* 149 F.3d 1309, 1315, 47 USPQ2d 1272, 1275 (Fed.Cir.1998).

Claim construction is an issue of law, *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 970–71, 34 USPQ2d 1321, 1322 (Fed.Cir.1995) (en banc), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), that we review *de novo, Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1172 (Fed.Cir. 1998) (en banc). The determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact. *Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1353, 48 USPQ2d 1674, 1676 (Fed. Cir.1998).

On appeal, Laser argues that claims 1 and 15 require only that all images printed by the "image forming device" be formed in one pass through that device, and that the district court erred in construing the claim to preclude pre-printing on the back of the form. Laser asserts that the CMF–301b form infringes the claims because, following a single pass of the form through an image-forming device, it may be assembled to have images on both sides. With respect to the CMF–088 form, Laser argues that the court erred in construing claim 1 to require two levels of "tack." Laser asserts that the reference in claim 1 to a "permanent bond" relates to the design of the bond as static or permanent, whereas the "releasable" bond is one that is designed for removal to facilitate the final construction of the assembly. Laser argues that the CMF–088 infringes claim 1 under a proper construction of that claim because it has a releasable portion and a portion that is designed not to be separated. Laser further argues in its briefs that the district court erred by not evaluating infringement under the doctrine of equivalents for the CMF–301b and CMF–088 forms.

United responds that the district court properly construed claims 1 and 15 as requiring that all images with address information formed by an image-forming device be on the front sheet, based on the plain language of the claims and statements made during prosecution. United asserts that the CMF–301b form does not infringe under that construction because it has two image-receiving surfaces and it

requires two passes through the printer in order to print both the addressee and return address fields. United also asserts that the district court properly interpreted claim 1 as requiring both a permanent and a releasable bond, and that the CMF–088 form does not infringe because it has a homogeneous bond throughout that is completely releasable. United also argues that Laser waived any arguments concerning infringement under the doctrine of equivalents.

■ We agree with United that the district court properly granted summary judgment that the CMF–301b form does not infringe the '622 patent. The court construed claims 1 and 15 as requiring all images to be printed on an image-receiving surface following a single pass through an image-forming device, stating that "the '622 patent requires all images to be on one side of the form." *Laser* at 10 n. 6. Although we conclude that that claim construction was overly restrictive because the claims may cover forms with pre-printed images, we nevertheless affirm the court's conclusion of noninfringement.

In construing patent claims, we first look to the intrinsic evidence of record—the claims, the specification, and, if in evidence, the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576 (Fed.Cir. 1996). Claim 1, in relevant part, is directed to "[a]n assembly adapted to being folded to form a folded document with images on both sides thereof, following a single pass of said assembly through an image forming device which places an image only on one side of said assembly . . . ." The claim is thus limited to documents having images formed by a "single pass." The document is then ready to be folded and used. Claim 15 is similarly directed to an assembly with images formed by a single pass through a printer.

The specification emphasizes the advantages of the claimed "single pass" feature. In the background section, Laser described the disadvantages of requiring two passes through a printer:

> While it is possible to turn the paper over to be run through the printer again, to thereby print on both sides, automated devices which accomplish this function are not commonly available with conventional office nonimpact printers found in most offices. Even if one could print on both sides of the form by manually feeding the same form again, this practice eliminates batching, whereby a large number of blank forms are placed in a paper feeding tray and all forms are produced at one time.

'622 patent, col. 1, l. 67 to col. 2, l. 9. In contrast, Laser characterized its invention as "a folded document with images formed on both sides thereof, following a *single pass* through an image forming device which places an image on one side of the assembly." *Id.* at col. 2, ll. 30–33 (emphasis added).

While the specification discloses that there may be pre-printed images on the front and back sheets of the form, *see, e.g.,* col. 3, ll. 15–18, ll. 24–26, those images are not the sort of information contemplated as the "images" formed by a single pass. Rather, the specification refers to such pre-printed images as, *e.g.,* "information regarding how the various parts of form 72 should be separated, folded, and used." *Id.* at col. 11, ll. 21–22. In contrast, the images formed by the "single pass" include more substantive address information. *See, e.g., id.,* Figs. 13 and 19 (showing all address information on the front sheet). The specification thus identifies the "images" formed by the "single pass" as address information necessary for mailing.

The prosecution history supports that interpretation of the claimed "images." The examiner rejected the claims over U.S. Patent 4,418,865 ("Bowen") for obviousness under 35 U.S.C. § 103. In response, Laser characterized Bowen as follows:

> Bowen discloses a multi-part billing document having an invoice and a common envelope used for delivery of the bill to the customer and for return by the customer with a check. *The Bowen form must be pre-printed with certain information needed for using the common envelope as a return envelope, as well as certain other information which does not vary from customer to customer, such as the billing party's mailing address.* Only unique information is printed during the single pass through an impact printer, such as the invoiced information and the customer's name and address..... When the common envelope is used to return the check, the uniquely printed recipient's name and address information is covered over and the preprinted information on the reverse side of sheet 22 is used as the envelope address information.

'622 patent file history, Paper No. 13, at 8–9. Thus, in Bowen, the return address information is pre-printed on the reverse side, whereas only the unique addressee information is printed on the front image-receiving surface during the single pass through the printer. Laser then contrasted the '622 invention from Bowen as follows:

> Claims 1 and 15 have also been amended to recite the limitation, "all images formed by said image forming device occurring . . . on both sides of said fold line." This limitation clearly distinguishes Applicant's claims from the Bowen disclosure, where all printed information is below the tear line 25 and

nothing is printed below the fold line 33. Applicant prints on both sides of the fold line to accomplish its purpose of "providing a folded document with images formed on both sides thereof, following a single pass through an image forming device", as recited in the preamble of claims 1 and 15. *In Bowen, it is necessary to use two passes through a printing device, or through two different printing devices.* The particular arrangement of the Bowen form does not permit information to be printed on both sides of the form, when folded . . . .

*Id.* at 10. Laser thus distinguished Bowen by emphasizing both the "single pass" feature of the claimed invention and the content of the images that must be printed by that single pass. Whereas Bowen required "two passes" through a printing device to obtain a form with both the unique addressee information and the sender's information, Laser characterized its invention as requiring only a single pass through a printer to receive all necessary mailing images on one image-receiving surface. Laser then achieved a final assembly like Bowen's (with printing on both sides) by folding the document so that the images appear on both sides of the fold line. Laser's arguments during prosecution disclaimed forms similar to Bowen's, in which the necessary address information is not imaged by a single pass. We therefore conclude that claims 1 and 15 should be interpreted so as to exclude forms in which two passes through a printer are required for imaging the necessary address information.

If ambiguity remains after consideration of the intrinsic evidence, "extrinsic evidence may also be considered, if needed to assist in determining the meaning or scope of technical terms in the claims." *Pall Corp. v. Micron Separations, Inc.,* 66 F.3d 1211, 1216, 36 USPQ2d 1225, 1228 (Fed. Cir.1995) (citations omitted). Although we

view the intrinsic evidence regarding the claimed "images" as unambiguous, we would in any event conclude that the extrinsic evidence from Laser itself fully supports our interpretation of the images formed by the single pass through the printer. Laser's president and the inventor of the '622 patent, Warren Fabel, identified the "images" of the claimed invention as including addressee information, sender information, bar code information and article information.

Turning now to infringement, Laser concedes that the CMF–301b is designed so that the return address information must be printed on the back sheet. Two passes through a printer are required to image all of the necessary address information for proper use of the form. As we have construed the claims as requiring that all of the necessary address information be printed on the front image-receiving surface in a single pass, we conclude as a matter of law that no reasonable fact-finder could find that the CMF–301b form infringes claims 1 and 15, and we therefore affirm the district court's grant of summary judgment of noninfringement of those claims.

■ We also affirm the district court's conclusion that the CMF–088 form does not infringe claim 1. The court interpreted that claim as requiring both a permanent and a releasable bond. Laser clearly distinguished between the two types of bonds in its claim, and we decline to ignore the plain language and write the terms "permanent" and "releasable" out of that claim. Neither the specification nor the prosecution history sheds much light on those terms. We therefore look no further than to the language itself, declining Laser's invitation to read special meaning into the word "permanent." Laser's arguments concerning the "design intent" of the '622 patent miss the mark. Even if Laser

meant by "permanent bond" a bond that is not actually released, the clear language of the claim distinguishing the two types of bonds compels our conclusion that a bond according to the claims cannot be both permanent and releasable. We are similarly not persuaded that the district court erred in its discussion of two types of "tack," which appears to have been a direct response to Laser's own arguments concerning varying degrees of tack. Because Laser has conceded that the bond between the two sheets of the CMF–088 form is releasable, Laser has failed to raise any genuine issue that the CMF–088 form has a permanent bond and thus meets the "permanent bond" limitation in claim 1. We therefore affirm the district court's grant of summary judgment of noninfringement with respect to that accused product.

We have considered the parties' remaining arguments and find them to be either unpersuasive or moot. We also decline to reach the question whether Laser waived its arguments of infringement under the doctrine of equivalents by not specifically asserting those claims to the district court, as that issue was waived in this court at oral argument.

Because the district court did not err in its conclusion that the CMF–301b and CMF–088 forms do not infringe the '622 patent as a matter of law, we affirm its grant of United's motion for summary judgment of noninfringement.